Edgar **FLETCHER**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 12–95–00085–CR.

Court of Appeals of Texas, Tyler.

April 30, 1997.

R. Kent Phillips, Longview, for appellant.

Ebb B. Mobley, Longview, for appellee.

Before RAMEY, C.J., and HOLCOMB and HADDEN, JJ.

HOLCOMB, Judge.

·Edgar Fletcher ("Appellant") was charged with Engaging in Organized Criminal Activity, with the predicate offense of aggravated robbery, to which Appellant pleaded "not guilty." Appellant's case was consolidated with the trial of a co-defendant, Sanford Jimmerson ("Jimmerson"). Following a jury trial, Appellant was found guilty of the offense, and punishment was thereafter assessed by the jury at 60 years' confinement in the Institutional Division of the Texas Department of Criminal Justice, and a $10,000 fine. Appellant assigns eight points of error. We **reform the judgment, and affirm as reformed.**

On February 2, 1994, Appellant, Jimmerson, Latecia Howard ("Howard"), and T.J. Jones ("Jones") were at the scene of a robbery, when Jones shot an elderly man with a handgun in the course of stealing the victim's automobile. Police officers soon located Appellant, Jimmerson and Jones, and arrested them on suspicion of murder. Officers advised Appellant of his *Miranda* rights when they first apprehended him, and then again at the police station. Appellant gave a confession, and two hours later went before a magistrate.

In his first and second points of error, Appellant complains that the trial court erred in admitting testimony of a discussion tending to support the State's contention that Appellant was involved in a conspiracy with Jimmerson and Jones. During the course of trial, the State offered the testimony ·of Heather McLane ("McLane"). Prior to her testimony, in a hearing outside the presence of the jury, the prosecutor informed the court that the witness would testify to a discussion involving Appellant, Jimmerson, and Jones about "getting a car and going to

Gladewater." Specifically, the prosecutor summarized the proffered testimony as follows:

> What I was anticipating asking her, Your Honor, in her testimony—is what she believed they were going to do and what she understood they were going to do. I think if the question had been asked differently at the previous trial, it would have been answered in a different fashion. The question that I'm going to be propounding to her concerning that is after all the parties left, what did she understand they were going to do. And that was that they were going to steal a car and rob a pawn shop—or hit a pawn shop in Gladewater.

Appellant's counsel objected to the proposed offer by stating, "Your Honor, we would object to her conjecturing or testifying as to what she believed they were going to do. She could only testify as to what she heard." The trial court initially sustained the objection. Then Jimmerson's attorney objected stating, ". . . if she's testifying about matters involving statements of these defendants or codefendants under the statements of the co-conspirators rule, then they need to be identified as to who they came from, who said what and when." The trial court agreed, stating, "I think that's reasonable."

The prosecutor then made an offer of proof. The witness testified during proffer that on February 2, 1994, she was at her residence. Persons present on that occasion were Appellant, Jones, Jimmerson, Howard, Shannon Neatherly, and Walter Gordon. The witness declared that the group discussed going to get a car, and then going to a pawn shop in Gladewater. The witness testified that everyone present was involved in the discussion, and that no one was left out. The witness repeatedly stated that she could not recall which individuals among those present made specific statements. The trial court, upon hearing the proffer, ruled the testimony admissible. The trial court further overruled an additional hearsay objection. The witness then testified before the jury to substantially the same facts. She stated that those involved in the discussion were "T.J. [Jones], Walter, Edgar [Appellant], Sanford [Jimmerson], and Tesha [How-

ard]." The witness further testified that Jimmerson, Appellant, Jones and Howard subsequently left the residence and that Jones had Walter Gordon's gun in his pants.

■ Appellant's first point complains that the witness possessed insufficient knowledge to testify about the alleged discussion. Appellant cites *DeLoach v. United States*, 307 F.2d 653 (C.A.D.C.1962), in which the Court of Appeals for the District of Columbia reversed a conviction. In *DeLoach*, witnesses, whose testimony supported the State's position that the defendant had prior knowledge of the plan to commit robbery, testified that "he agreed," "they agreed," "he knew," and so forth. *Id.* at 654. The trial judge ruled that it made no difference who made the statements as long as it was made in the presence of the defendants. The D.C. Court of Appeals held that "it was error to deny the effort to identify the 'anonymous' speaker with whose words the government has sought to bind appellant." *Id.* In reversing the conviction, Judge Burger, later Chief Justice of the U.S. Supreme Court, wrote as follows:

> When a witness fails to identify a speaker whose utterances he purports to repeat, and when it is sought to bind the accused by such utterances, counsel offering that witness should, as a matter of sound practice apart from other important considerations immediately require the witness to identify the speaker. Similarly, when a witness testifies in terms of conclusions such as "he agreed" or "they all agreed" or "he made admissions," such answers should be stricken and the witness required to state what was actually said. The conclusions or interpretations of a witness as to the meaning of what someone said is not admissible.

*Id.* at 654–55. Appellant points out that the testimony of McLane lacked the specificity as to content and identity necessary to make such testimony competent. *Citing* TEX. R.CRIM.EVID. 601.

We distinguish *DeLoach* from the instant case. In *DeLoach*, the testimony was based upon the conclusions of the witnesses, not on the substance of the statements. In this case, McLane testified that she heard a dis-

cussion between Appellant, Jimmerson, Howard, and Jones about getting a car and going to a pawn shop in Gladewater. She could not testify as to who specifically said what, but there was no doubt as to who engaged in the discussion, and what was said during the discussion. The State's witness did not testify based upon her conclusions or conjectures as to what the co-defendants meant by their statements, but upon her personal knowledge of what they actually said. McLane's sworn statements as to who was present and what was said was competent testimony, and the trial court correctly admitted it. Appellant's first point of error is overruled.

Appellant's second point of error complains that McLane's testimony was hearsay, and was thereby inadmissible. He argues that the statements do not qualify as either adoptive admissions, or as statements by a co-conspirator made during the course and in the furtherance of the conspiracy. Tex. R.Crim.Evid. 801(e)(2)(B), 801(e)(2)(E).

■■■■ An adoptive admission of a party-opponent is not hearsay. It occurs when a statement is made in the defendant's presence, which he understood and which called for a reply, and the defendant remains silent although not under arrest. *Crestfield v. State,* 471 S.W.2d 50, 53 (1971); *Tucker v. State,* 771 S.W.2d 523, 535–36 (Tex.Cr.App. 1988); Tex.R.Crim.Evid. 801(e)(2)(B). According to Appellant, the statements to which McLane testified do not furnish a basis for the applicability of this Rule. He contends that the witness was unable on cross-examination to relate such basic information as the location of the individuals in the room, or even who was sitting next to her. The record contains no information whatsoever describing Appellant's position in the room, his demeanor during the conversation, any specific comment he might have made, or whether he was even listening to the comments. Thus, Appellant argues that no evidentiary basis exists to support the conclusion that Appellant heard or understood the remarks in question. Further, he asserts that the record does not support a conclusion that any

remarks made in his presence would call for a reply. We agree with Appellant that the statements made in McLane's presence do not qualify as adoptive admissions.

■■■■ Appellant also argues that the statements made during the discussion at issue do not satisfy the co-conspirator exception.[1] A statement of a co-conspirator of a party is admissible if the statement was made during the course and in furtherance of the conspiracy. Tex.R.Crim.Evid. 801(e)(2)(E). The proponent of the evidence must show that a conspiracy existed in which the defendant was a member or later participated, that the declarant was a member of the conspiracy at the time the statements were made, and that the statement furthered the object and purpose of the conspiracy. *Ward v. State,* 657 S.W.2d 133 (Tex.Cr.App. 1983). Appellant contends that McLane's testimony failed to satisfy the last two conditions.

Appellant relies upon *United States v. Fielding,* 645 F.2d 719 (9th Cir.1981) for his contention that Appellant, Jimmerson, Jones, and the others were simply having a conversation, and that mere conversations between conspirators do not further the conspiracy and are, therefore, inadmissible. He points out that according to Appellant's and Jimmerson's confessions, the plan "to get a car and go to Gladewater" had already been formulated. And that a fair reading of the record indicates that the discussion recounted by McLane amounted to no more than "mere conversation" and "casual admission of culpability" to the non-co-conspirators. He further contends that there is no evidence that the purpose of the conversation was to advance the object of the conspiracy.

Secondly, Appellant argues that the State failed to show that the declarant was a member of the conspiracy at the time the statements were made. He contends that the "anonymous" nature of the declaration fails to satisfy the requirement that the declarant be a member of the conspiracy. He points out that at least one individual, Shannon

---

1. Although perhaps splitting hairs, we would point out that neither adoptive admissions nor statements by a co-conspirator are exceptions to the hearsay rule, but rather are simply not hearsay.

Netherly, was present at the time of the discussion and was not shown to be a member of the conspiracy (in addition to the witness McLane, who was also not a member of the conspiracy). According to Appellant, in the absence of specific testimony as to who said what and when, the necessary ingredient that the declarant be a member of the conspiracy can be supplied only by pure conjecture. We agree that the statements related by McLane do not rise to the level of statements by a co-conspirator. However, the statements are admitted on other grounds.

■ The State's position on this issue is that the discussion was simply not hearsay because the statements were not offered for their truth. It cites *Alexander v. State*, 820 S.W.2d 821 (Tex.App.—Waco 1991, pet. ref'd) in support of this proposition. In *Alexander*, a witness testified that he was present during a discussion about robbing a pizza deliveryman. *Id.* at 823. The court of appeals held the following:

> Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. TEX.R.CRIM.EVID. 801(d). Davis did not relate any "statement" by a third-party declarant that was offered for the truth of the matter asserted, but testified only that "discussions ... about robbing [Taylor]" took place. Because the objected-to testimony was not hearsay, we overrule ...

*Id.*

The same is true in the instant case. McLane did not relate any statement by a declarant that was offered for the truth of the matter asserted. Rather, she testified only that a discussion about getting a car and going to Gladewater took place, and that Appellant was present and participated in the discussion. The State was not attempting to prove that Appellant stole a car and drove to Gladewater, but rather that Appellant was part of a conspiracy to commit an illegal act. Appellant's second point of error is overruled.

Appellant's third and fourth points of error concern the trial court's admission into evidence of a close-up photograph of the deceased, and of the court's comment on the weight of that evidence. The victim was shot in the face at close range, and Appellant contends that the photograph's prejudicial impact substantially outweighed its probative value. At the time the trial court admitted the photo into evidence, he stated, "I find that the probative value of State's Exhibit 4 greatly outweighs any potential prejudice. I admit 4." Appellant then correctly objected to the court's comment on the weight of the evidence, and asked for an instruction to disregard. The court complied by stating, "[d]isregard the comment, ladies and gentleman. The exhibit is admitted." Appellant proceeded to move for a mistrial, which the court denied. In the charge, the court instructed the jury as follows:

> You are instructed that you are not to allow yourselves to be influenced in any degree whatsoever by what you may think or surmise the opinion of the court to be. The court has no right by any word or any act to indicate any opinion respecting any matter of fact involved in the case, nor to indicate any desire respecting its outcome. The court has not intended to express any opinion upon any matter of fact in this case, and if you observed anything which you have or may interpret as the court's opinion upon any matter of fact in this case, you must wholly disregard it.

Appellant contends that the trial court committed reversible error by admitting a "gruesome" picture into evidence. He cites Rule 403 of the Texas Rules of Criminal Evidence, which provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

TEX.R.CRIM.EVID. 403. Trial judges are required to exclude even relevant evidence when its probative value is substantially outweighed by the danger of unfair prejudice. *Montgomery v. State*, 810 S.W.2d 372, 392 (Tex.Cr.App.1990). Accordingly, when the opponent of evidence satisfactorily demonstrates that its probative value is far less

than the danger of unfair prejudice it poses, and he objects to its receipt on this basis, the trial judge must not admit it. *Id.* In making the determination:

> ... the trial judge should consider the inherent tendency that some evidence may have to encourage resolution of material issues on an inappropriate basis and should balance carefully against it the host of factors affecting probativeness, including relative weight of the evidence and the degree to which its proponent might be disadvantaged without it.

*Fuller v. State,* 829 S.W.2d 191, 206 (Tex.Cr. App.1992). A trial court's decision is reviewed under the abuse of discretion standard, and is disturbed on appeal only when the trial court's decision falls outside the zone of reasonable disagreement. *Montgomery,* 810 S.W.2d at 391.

Appellant relies upon *Hilliard v. State,* 881 S.W.2d 917 (Tex.App.—Fort Worth 1994, no pet.) for the proposition that because he was not charged with the offense of murder, the photograph of the deceased was not relevant to the determination of any fact at issue. However, in the instant case, Appellant did not object to the photograph as to relevance, but only that its prejudicial effect far outweighed its probative value. Appellant further urges that even if the photo did have some relevance as to the victim's "fear of imminent bodily injury and death," the assault was not in dispute, and the exclusion of the photograph would not have disadvantaged the prosecution in any respect.

The State responds that Rule 403 favors the admission of relevant evidence and carries the presumption that relevant evidence will be more probative than prejudicial. *Montgomery,* 810 S.W.2d at 389. And generally, when verbal testimony describing a scene is admissible, then a photograph of that scene would also be admissible. *Hernandez v. State,* 819 S.W.2d 806, 819 (Tex.Cr. App.1991), *cert. denied,* 504 U.S. 974, 112 S.Ct. 2944, 119 L.Ed.2d 568 (1992); *Ramirez v. State,* 815 S.W.2d 636, 647 (Tex.Cr.App. 1991). "An abuse of discretion arises only when the probative value of the photograph is small and its inflammatory potential great." *Id.*

The complained of photograph was one of four photographs of the victim at the crime scene admitted into evidence. Appellant had no objections to the other three. At trial, Cherita Johnson testified without objection that she saw a man lying in the street, and that he had been shot in the head. A neighbor testified that he looked at the victim, but saw that he could not help him. He also testified without objection that the photograph in question was a true representation of how the victim appeared after his death. A police officer testified without objection to the following:

> I observed an elderly man laying on his back in the middle of the street. He was bleeding heavily—or had been bleeding heavily. And he appeared to have been shot in the face ... I checked for a pulse. The gentleman's eyes were open. He was obviously dead. There was no pulse whatsoever.

In *Moss v. State,* 860 S.W.2d 194 (Tex. App.—Texarkana 1993, no pet.), the appellate court found that the probative value of two autopsy photographs and a crime scene photograph was not substantially outweighed by the danger of unfair prejudice. In *Price v. State,* 870 S.W.2d 205 (Tex.App.—Fort Worth), *aff'd,* 887 S.W.2d 949 (Tex.Cr.App. 1994), the court of appeals ruled that the admission of a videotape depiction of a crime scene, as well as photographs showing the position of stab wounds on the victim's body was within the zone of reasonable disagreement.

■ In the instant case, the photograph illustrated, though graphically, one of the elements of the offense—that the robbery was "aggravated." Three witnesses described the victim and how he appeared upon their arrival. The photograph was not so horrifying or appalling that a juror of normal sensitivity would necessarily encounter difficulty rationally deciding the critical issues of the case after viewing it. *See Purtell v. State,* 761 S.W.2d 360, 370–71 (Tex.Cr.App. 1988), *cert. denied,* 490 U.S. 1059, 109 S.Ct. 1972, 104 L.Ed.2d 441 (1989); *Jackson v. State,* 745 S.W.2d 4, 18 (Tex.Cr.App. 1988). We conclude that the trial court's decision to

admit the photo of the victim was within the zone of reasonable disagreement. Appellant's point of error three is overruled.

■ In Appellant's fourth point of error, he contends that the trial court committed reversible error when it failed to grant a mistrial after its comment on the weight of the evidence upon admission of the photograph described above. Article 38.05, Texas Code of Criminal Procedure provides:

> In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any stage of the proceeding prior to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case.

TEX.CODE CRIM.PROC.ANN. art. 38.05 (Vernon 1995). There is no doubt that the court, when it ruled upon the admissibility of the photo, impermissibly commented on the weight of the evidence. The question remains whether or not it was reversible error.

■ To constitute reversible error, the trial court's comment to the jury must be such that it is reasonably calculated to benefit the State or to prejudice the rights of the defendant. *Becknell v. State,* 720 S.W.2d 526, 531 (Tex.Cr.App.1986). To determine whether the comment is either reasonably calculated to benefit the State or to prejudice the defendant, the appellate court must first examine whether the trial court's statement was material to the case. *Clark v. State,* 878 S.W.2d 224 (Tex.App.—Dallas 1994, no pet.); *Burge v. State,* 443 S.W.2d 720, 724 (Tex.Cr. App.1969), *cert. denied,* 396 U.S. 934, 90 S.Ct. 277, 24 L.Ed.2d 233 (1969). A statement is material if it: "(1) implies approval of the State's argument; (2) indicates any disbelief in the defense's position; or (3) diminishes the credibility of the defense's approach to its case." *Clark,* 878 S.W.2d at 226. But generally, an instruction by the judge to disregard any comment made by him is sufficient to cure any error. *See Marks v. State,* 617 S.W.2d 250, 252 (Tex.Cr.App.1981); *Jackson v. State of Texas,* 548 S.W.2d 685, 695 (Tex.Cr.App.1977). In the instant case, the court's instruction to disregard the trial

court's comment was sufficient to remedy the harm or prejudice to Appellant, if any, by that comment. Appellant's fourth point of error is overruled.

In his fifth and sixth points of error, Appellant complains that when the trial court admitted Appellant's confession into evidence, it violated Article 14.06 of the Texas Code of Criminal Procedure, the Fifth Amendment of the U.S. Constitution, and Article I, Section 9 of the Texas Constitution, thus committing reversible error. Appellant contends that the violation of Article 14.06 should have precluded the admission of the confession pursuant to Article 38.23 of the Texas Code of Criminal Procedure. He also avers that he did not make a knowing, intelligent and voluntary decision to waive his right to remain silent, rendering his confession ineffective.

■ Article 14.06 provides that upon making an arrest, a suspect shall be taken "without unnecessary delay" before a magistrate in order that the magistrate can expeditiously provide the suspect with the [Miranda] warnings required by article 15.17 of the Texas Code of Criminal Procedure. TEX. CODE CRIM.PROC.ANN. art. 14.06 (Vernon 1995). But the failure to take an arrestee before a magistrate in a timely manner will not invalidate a confession unless there is proof of a causal connection between the delay and the confession. *Cantu v. State,* 842 S.W.2d 667, 680 (Tex.Cr.App.1992), *cert. denied,* 509 U.S. 926, 113 S.Ct. 3046, 125 L.Ed.2d 731 (1992). The burden is on Appellant to show the delay was unreasonable and to show the causal connection between the confession and the delay. *State v. Vogel,* 852 S.W.2d 567, 569–70 (Tex.App.—Dallas 1992, pet. ref'd). Additionally, a violation of the Article 15.17 requirement will not vitiate an otherwise voluntary confession if the arrestee was properly advised of his *Miranda* rights. *Boyd v. State,* 811 S.W.2d 105, 125 (Tex.Cr. App.1991); *Von Byrd v. State,* 569 S.W.2d 883, 893 (Tex.Cr.App.1978).

■ The federal and state standard for determining whether a confession was knowingly, intelligently and voluntarily given is whether the confession is the product of an

essentially free and unconstrained choice of its maker, free of any direct or indirect influences, however slight, which might have affected its giving. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *See also Stevenson v. State,* 780 S.W.2d 294 (Tex.App.—Tyler 1989, no pet.). A confession must not only be shown to be voluntary but also that the waiver of rights were intelligently and knowingly made. *Phifer v. State,* 651 S.W.2d 774, 778 (Tex.Cr.App.1983).

■ In the instant case, a police officer read Appellant his *Miranda* warnings immediately after arrest, and then again before Appellant agreed to speak with officers at the police station. Appellant stated that he understood his rights. Before waiving his right to remain silent, a police officer informed Appellant that, although he knew Appellant wasn't the one who actually shot the victim, he was under arrest for capital murder. Appellant proceeded to ask the officer what he was facing, to which the officer replied "life or death penalty." Appellant was nineteen years old at the time of the offense and confession, and admittedly "scared." He agreed to give a statement, and subsequently signed a written confession. Appellant did not testify at the hearing on his motion to suppress, and he presented no evidence to show that his confession was coerced by the officer's statement about the death penalty, or that his confession was not voluntary. At trial, Appellant testified that he understood his rights and that he voluntarily gave a written statement to the officers and voluntarily signed it.

Appellant contends that because of his age, his state of mind, and the misinformation he received as to a key fact (the possibility of getting the death penalty), Appellant's confession was not the product of an intelligent, informed, knowing, and voluntary choice within the meanings of the U.S. and Texas Constitutions. Appellant further asserts that a causal connection exists between his confession and the officers' failure to take him before a magistrate for two hours after arrest. He concludes that if the procedure had been correctly followed, the question "what

am I facing?" could have been answered accurately and completely.

Because the voluntariness of the confession is determinative of both points of error, we will address that issue. Prior to trial, Appellant filed a motion to suppress his written confession. After substantial testimony by the officers involved in the arrest and interrogation, the court ruled as follows:

This court makes the following rulings, all made from the evidence beyond a reasonable doubt. As to those Defendants that were arrested without a warrant, they were arrested upon probable cause existing at that time. The search in question was totally valid. All statements given by Defendants were taken in the manner as the law specifies. They were wholly voluntary. No promises made, no threats. And upon their proper predicate being laid for their admission before a jury, a jury will hear them. That's the order of the court.

There is no abuse of discretion in ruling that defendant's statement was voluntary despite his emotional distress at the time of his confession. *Ballestero v. State,* 640 S.W.2d 423, 426 (Tex.App.—San Antonio 1982, no pet.). Even when a police officer incorrectly alludes to the death penalty before defendant gives his confession, the evidence can still support a finding that the confession was voluntarily given. *Bautista v. State,* 642 S.W.2d 233, 236 (Tex.App.—Houston [14th Dist.] 1982, pet. ref'd, untimely filed). Determination of the admissibility of evidence is within the sound discretion of the trial court, and such determination will not be reversed unless clear abuse of discretion is shown by the complainant. *Werner v. State,* 711 S.W.2d 639, 643 (Tex.Cr.App.1986). Because the trial court is the sole trier of fact at a hearing on a motion to suppress, this Court is not at liberty to disturb any finding supported by the record. *Green v. State,* 615 S.W.2d 700, 707 (Tex.Cr.App.1980), *cert. denied,* 454 U.S. 952, 102 S.Ct. 490, 70 L.Ed.2d 258 (1981); *Beasley v. State,* 674 S.W.2d 762, 768 (Tex.Cr.App.1982). In the instant case, the trial court made specific findings that Appellant's confession was voluntary, and the evidence supports those findings. Therefore, we overrule points of error five and six.

In points of error seven and eight, Appellant complains that the trial court erred in making an affirmative finding of a deadly weapon, since the finding was not authorized by the jury verdict and Appellant was not given fair notice of the State's intent to seek such a finding. In reviewing the verdict, it is apparent that there was no affirmative finding that Appellant used a deadly weapon in the commission of the offense; therefore, we sustain point of error seven. The judgment in cause number 22,203–B from the 124th District Court of Gregg County is reformed to delete the finding of deadly weapon. Because of our holding on point of error seven, it is unnecessary to address Appellant's last point of error. The judgment of the trial court is affirmed, as reformed.