**Affirmed and Opinion Filed November 10, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01090-CR

### JEREMY LAMONTE SILLEMON, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 195th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-12-24277-N**

## MEMORANDUM OPINION

Before Justices Bridges, Lang, and Evans
Opinion by Justice Bridges

A jury convicted appellant Jeremy Lamonte Sillemon for the offense of injury to a child.

The trial court assessed punishment for twenty-four years, six months' confinement. In a single

issue, Sillemon argues the trial court abused its discretion by admitting all thirty-nine

photographs depicting the complainant's injuries. We affirm.

### Background

Sillemon lived in an apartment with his girlfriend, Tatiana Nobles. Tatiana's three-year-

old son, the complainant, also lived in the apartment,[1] along with various other relatives.

On August 30, 2012, the day began "as usual" for the members of the household.

Tatiana's brother, her mother, and her step-father woke up around 5:30 a.m. Her mother drove

---

[1] At the time of trial, complainant was four-years-old.

her brother to school, then dropped her husband off at work, and then she arrived at work by 7 a.m. Tatiana, Sillemon, and complainant were still asleep.

Tatiana explained that if she woke up before appellant and her son, she straightened the apartment and made breakfast. She would then run the bath water and give complainant a bath. She testified he could get in and out of the water on his own. On the mornings complainant and Sillemon slept late, Sillemon would give the bath because Tatiana needed to leave for school. On the morning of August 30, Tatiana left the apartment around 9 a.m. to meet a friend and take a bus to the Work Force. The record is silent as to whether she gave complainant a bath before leaving.

Around 9 a.m. that morning, Jessie Smith, a neighbor and good friend of the family, heard an urgent knock on his door. When he looked outside, he saw Sillemon holding complainant in his arms. After opening the door, Jessie saw "a lot of burns" on complainant's legs. "Just a horrific sight. It almost looked like his skin was coming off of him. It looked really bad." Although complainant was not crying at the time, Jessie said it was obvious complainant had been crying, and he seemed distraught.

Jessie asked Sillemon what happened, and Sillemon explained that he was running bathwater and cooking at the same time. When the microwave went off, Sillemon left the bathroom and went to the kitchen. Sillemon said complainant jumped into the bathtub after he left the room. Jessie testified the explanation did not make sense to him. Sillemon did not want to call an ambulance or take complainant to the hospital. Rather, he only wanted to call Tatiana.

Tatiana received a phone call from Sillemon when she and her friend were about halfway to the South Garland Transit Station. Sillemon told her complainant burned a small part of his foot with hot water, and she needed to come home. However, when she talked to Jessie, he said, "This look bad; you need to get here now."

When Tatiana arrived at the apartment, she described her son as "just sitting there . . . his skin bubbled up and hanging and sagging." She immediately called her mother and asked her to meet them at the hospital. Her neighbor then took them to Baylor Hospital.

On the way to the hospital, Sillemon told Tatiana he did not "whup" complainant. He said complainant had a potty accident, and complainant was trying to clean up on his own. Sillemon said the potty flipped the water onto complainant and burned him. Tatiana testified she was potty-training complainant and he occasionally had accidents, but he never cleaned up on his own.

Because of complainant's extensive burns, Care Flight took him to Parkland Hospital. When they arrived at Parkland, detectives separated Sillemon and Tatiana. She told the same story Sillemon had told her in the car ride to the hospital. However, at first she told the detectives she was at the apartment because she was scared she would get in trouble for leaving her son. Later, however, she admitted she was not home. She testified she had not talked to Sillemon since that day in the hospital.

Dr. Matthew Cox was the pediatrician contacted by Parkland Hospital to evaluate complainant's burn injuries. He was also the medical director of R.E.A.C.H., a program for the referral and evaluation of at-risk children. He explained the program conducted medical evaluations of children in a hospital or clinic setting whose injuries may have been caused by abuse or neglect.

Dr. Cox provided testimony during trial about complainant's injuries. He described the difference between a first, second, and third-degree burn. He further explained the burn patterns one expected to see when scalding water splashed a person verses when a person was submerged in water. A bathtub injury, sometimes called an immersion burn, would look more uniform and

one would expect to see a water line from the scalding water rather than splash marks from a splash burn. He said scalding water could cause burns within a few seconds to a child.

He explained the body's natural reaction to avoid something that hurts, like scalding water and that a child of complainant's age, with the ability to get in and out of the bathtub, would normally not have immersion burns. The immediate pain sensation from the scalding water would result in a child trying to get out of the bathtub, rather than staying in it to the point of immersion burns.

Dr. Cox took pictures of complainant on the day of the injury and one day later because burn patterns are easier to see a day or two later. Over Sillemon's objection, the State showed the jury pictures from both days.

The pictures showed the extensive nature of the second-degree burns on complainant's lower legs, scrotum, penis, buttocks, and lower back. He suffered third-degree burns on his feet, which required skin grafts.

The burn pattern indicated complainant was in a tucked position when he was forced into the water. Dr. Cox explained this would be a natural responsive position as to prevent parts of the body from contacting the scalding water. The tucked position also showed the "sparing" of certain body parts from burning, specifically the front of complainant's thighs, his belly, and the backs of his knees. The pictures also revealed recent bruising patterns indicating complainant had been struck with some unknown object.

Dr. Cox opined that based on his examination, complainant's injuries were consistent with a "forced immersion pattern burning as well as having some recent bruises and pattern injuries that would indicate he had been struck with some type of object." The forced immersion pattern was not something a child could do to himself. He explained someone had to have a part in causing the burns. Dr. Cox said he was told complainant soiled himself while at home and

–4–

"was put on the training pot and had dumped the pot into the tub and climbed into the tub and somehow burned himself." Sillemon's explanation of how complainant received his injuries was not consistent with the burn patterns. Therefore, Dr. Cox concluded complainant's injuries indicated physical abuse.

Dr. Cox classified complainant's injury as a serious bodily injury because of the scarring and life-long deformity he will have from the third-degree burns on his feet. He also explained the scarring could affect the range of motion in complainant's ankles, causing problems with walking later in life.

Despite defense counsel's attempts to provide "another plausible explanation" of what happened in the bathtub to cause the burns, the jury found Sillemon guilty of injury to a child. The trial court assessed punishment at twenty-four years, six months' confinement. This appeal followed.

## Discussion

In his sole issue, Sillemon complains the trial court abused its discretion by admitting thirty-nine photos of complainant's injuries. Specifically, he argues the photographs' probative value did not substantially outweigh their inflammatory nature; therefore, the trial court violated Texas Rule of Evidence 403. The State responds the trial court did not abuse its discretion because the probative value substantially outweighed their alleged prejudicial nature.

A trial court's decision to admit photographs is reviewed for an abuse of discretion and will not be reversed unless the court's ruling falls outside the zone of reasonable disagreement. *Williams v. State*, 301 S.W.3d 675, 690 (Tex. Crim. App. 2009). Generally, a photograph is admissible if verbal testimony as to matters depicted in the photographs is also admissible. *Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007); *Davenport v. State*, No. 05-10-

00329-CR, 2012 WL 75662, at *6 (Tex. App.—Dallas Jan. 11, 2012, pet. ref'd) (not designated for publication).

Rule 403 requires a photograph to have some probative value. TEX. R. EVID. 403. The rule favors admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Gallo*, 239 S.W.3d at 762.

A court may consider several factors in determining whether the probative value of the photographs is substantially outweighed by the danger of unfair prejudice. *Williams*, 301 S.W.3d at 690. The factors include: the probative value of the evidence, the potential to impress the jury in some irrational, yet indelible way, the time needed to develop the evidence, and the proponent's need for the evidence. *Prible v. State*, 175 S.W.3d 724, 733 (Tex. Crim. App. 2005). The court may also consider the number of exhibits offered, their gruesomeness, their detail, their size, whether they are in color or black-and-white, whether they are close-up, whether the body depicted is clothed or naked, the availability of other means of proof, and any other circumstances unique to the individual case. *Williams*, 301 S.W.3d at 690; *Henderson v. State*, No. 05-11-01437-CR, 2012 WL 5383194, at *4 (Tex. App.—Dallas Nov. 5, 2012, pet. ref'd) (not designated for publication).

The State offered exhibits 29-72, which were photographs taken by Dr. Cox on August 30 and August 31 of complainant's injuries. After an off-the-record discussion, defense counsel objected on the record "to any photograph showing injury to [complainant]." Counsel argued the prejudicial effect far outweighed any probative value that the photographs may have. The trial court overruled the objection because the photographs "reasonably depict the injuries suffered by the complainant." Further, the court determined the photographs were relevant, and therefore, any prejudicial effect was outweighed by their probative value. The State then offered into

evidence exhibits 15-32, 34-38, 42, 44, 45, 47, 48, 50, 53, 54, 56, 58, 60, 63, 66, 68, and 71. Dr. Cox explained the admitted photographs would assist the jury in understanding his conclusions.

Considering the relevant factors for admission of photos, appellant concedes they were probative of complainant's injuries and that it did not take much time for the State to lay the foundation for their admission. He, therefore, admits these two factors weigh in favor of the State and admission of the photos. He asserts the remaining factors under a rule 403 analysis weigh heavily against admission of the photos. We do not agree.

Sillemon argues introducing all of the photographs was not essential to the State's case because (1) the fact that complainant was burned was not in dispute; (2) Dr. Cox's testimony sufficiently described the injuries in detail; and (3) Jessie and Tatiana both described the graphic nature of the burns. Photos that depict the nature, location, and extent of an injury have been declared probative enough to outweigh any prejudicial effect. *Frank v. State*, 183 S.W.3d 63, 78 (Tex. App.—Fort Worth 2005, pet. ref'd). The fact that complainant's injuries were not in dispute does not lessen the relevance of the photos needed to demonstrate his injuries. *See, e.g., Fletcher v. State*, 960 S.W.2d 694, 700 (Tex. App.—Tyler 1997, no pet.) (concluding trial court did not err in admitting photos over a rule 403 objection despite defendant's argument that assault was not in dispute and exclusion of photos would not disadvantage the prosecution).

Moreover, a photograph is generally admissible if verbal testimony about the matters depicted in the photograph is also admissible. *Gallo*, 239 S.W.3d at 762 ("The fact that the jury also heard testimony regarding the injuries . . . does not reduce the relevance of the visual depiction."); *Chamberlain v. State*, 998 S.W.2d 230, 237 (Tex. Crim. App. 1999) (en banc) ("Visual evidence accompanying testimony is most persuasive and often gives the fact finder a point of comparison against which to test the credibility of a witness and the validity of his conclusions."). The testimony of Dr. Cox, Jessie, and Tatiana was admissible. Therefore, the

visual images of the injuries Sillemon inflicted on complainant are relevant to the jury's determination, and the fact that the jury also heard testimony regarding the injuries depicted does not reduce the relevance of the photos. *Gallo*, S.W.3d at 762. This factor weighs in favor of the photos' admission.

Sillemon next argues it was error to admit so many photographs depicting the same injuries because "it is clear the only purpose . . . was to inflame the jury's emotions and passions. . . ." However, as the State correctly notes, the number of photos presented to the jury is the result of the extensive wounds complainant suffered at the hands of appellant. The photos accurately depict the severity and amount of damage done to complainant's feet, legs, buttocks, and genitals. While Sillemon suggests these photographs, when grouped together, show similar angle and body parts, Dr. Cox explained the purpose of the photographs and often explained the specific importance of the particular angle and the specific injury that was depicted.

Sillemon also argues the photographs illustrate the injuries in a manner that is significantly more prejudicial than probative because some of the photos unnecessarily show complainant's face, genitals, and his genitals with a catheter in place. We first note Sillemon objected "to any photograph showing injury to [complainant]." He did not object to the photographs because they showed complainant's face, genitals, or a catheter. To the extent he makes such an argument, his argument is waived. TEX. R. APP. P. 33.1.

However, even if we considered Sillemon's argument, complainant's burns occurred on the entire lower half of his body; therefore, in order to document his injuries, complainant's genitals would necessarily be exposed. Dr. Cox explained that the underside of complainant's genitals were burned and blistered. Specifically, Dr. Cox described how complainant's penis had some "sloughing of the skin and blisters involving his scrotum." As previously stated, the fact

that the jury heard testimony regarding the injuries does not reduce the relevance of the visual depiction. *Gallo*, 239 S.W.3d at 762.

Dr. Cox also explained the purpose of the Foley catheter seen in some of the pictures. The catheter was required to closely monitor complainant's urine output. From a medical standpoint, he testified fluid management is "very important" in burn victims. Further, he said it was common for children with genital burns to hold their urine because it hurts when urine hits the open skin. The catheter allows them to urinate without pain. Thus, in addition to illustrating complainant's injuries, these pictures also assisted the jury in understanding some of the medical treatment he needed because of his injuries. *See, e.g., Strickland v. State*, No. 06-06-00238-CR, 2007 WL 2592440, at *2 (Tex. App.—Texarkana 2007, no pet.) (mem. op., not designated for publication) (photographs properly admitted showing injuries and various tubes inserted in victim's abdomen required for medical treatment after serious car accident). These photos were not "so horrifying or appalling that a juror with normal sensitivity would necessarily encounter difficulty rationally deciding the critical issues of the case after viewing [them]." *Fletcher*, 960 S.W.2d at 700.

While the photos are most certainly difficult to look at and likely made an indelible impression on the jury, they do not depict more than the nature of the crime. None of the images simply appeal to the jury's emotion to lead the jury to make an irrational verdict. *See Erazo v. State*, 144 S.W.3d 487, 491–92 (Tex. Crim. App. 2004) (noting relevant photos are inadmissible only if the emotional and prejudicial aspects substantially outweigh helpful aspects). Therefore, it is unlikely the photos rendered the jury irrational and incapable of making a sober assessment of the facts. This factor weighs in favor of admissibility.

We likewise conclude the remaining factors do not weigh against admission of the photos. The photos were not overly large (8x12 inches). They needed to be in color to

accurately show the extent of complainant's injuries. And although appellant protests about complainant's naked body in some of the photos, as previously stated, because of the location of some of the injuries, accurate documentation could only occur while he was naked.

And finally, a trial court does not err merely because it admits into evidence photographs that are gruesome. *Sonnier v. State*, 913 S.W.2d 511, 519 (Tex. Crim. App. 1995) (en banc). The photographs are no worse than would be expected in this sort of crime, showing the second and third-degree burns on complainant's lower body shortly after they occurred and a day later when burn patterns appeared more clearly. When, as here, the power of the visible evidence emanates from nothing more than what Sillemon himself has done, we cannot conclude the probative value of the photographs was substantially outweighed by their prejudicial effect. The trial court did not err in allowing the photographs into evidence. Sillemon's sole issue is overruled.

## Conclusion

The judgment of the trial court is affirmed.


Do Not Publish
TEX. R. APP. P. 47
131090F.U05

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JEREMY LAMONTE SILLEMON,
Appellant

No. 05-13-01090-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 195th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F-12-24277-N.
Opinion delivered by Justice Bridges.
Justices Lang and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered November 10, 2014.