# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00516-CR

**Mark Anthony Serrano, Appellant**

**v.**

**The State of Texas, Appellee**

FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 391ST JUDICIAL DISTRICT
NO. D-14-0081-SA, HONORABLE BARBARA L. WALTHER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Mark Anthony Serrano was arrested and indicted for the theft of several pieces of furniture having a total value between $20,000 and $100,000. *See* Tex. Penal Code § 31.03(a)-(b) (setting out elements of offense), (e)(5) (providing that offense is third-degree felony). Moreover, the indictment contained enhancement paragraphs alleging that Serrano had previously been convicted of two felony offenses. At the end of the guilt or innocence phase, the jury returned a verdict of guilty. During the punishment phase, the district court entered a plea of not true to the enhancement allegations on Serrano's behalf. At the end of the punishment phase, the jury found that the enhancement allegations were true and determined that Serrano should be imprisoned for 25 years. *See id.* § 12.42(d) (listing permissible punishment range for felony offense if it is shown that "defendant has previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction

having become final"). Shortly thereafter, the district court entered its judgment in accordance with the jury's determinations. In two issues on appeal, Serrano contends that the district court erred by failing to suppress statements that he made to the police during a custodial interrogation. We will affirm the district court's judgment of conviction.

## BACKGROUND

After receiving a tip from a confidential informant, the police obtained a warrant to search Serrano's home for furniture stolen from a furniture store. While searching his home, the police found several pieces of the stolen property. The police arrested Serrano at his home and took him to the county jail. Approximately three days after his arrest, Serrano was brought before a magistrate for the purposes of providing him with the requisite warnings listed in article 15.17 of the Code of Criminal Procedure and determining the amount of his bail. *See* Tex. Code Crim. Proc. art. 15.17. During the hearing, Serrano requested a court-appointed attorney. At the end of the hearing, the magistrate set Serrano's bail at $200,000. Two days after the hearing, Serrano was appointed counsel, but the order appointing the attorney was not transmitted to the attorney's office until the following day. On the day that the order was transmitted, Serrano was transported from the jail to the police station for questioning, and that interrogation was recorded.

At the start of the trial, Serrano made an oral motion to suppress the statements that he made during the interrogation. During the suppression hearing, Serrano argued that his statements were not freely and voluntarily made, that he made those statements under the misunderstanding that he did not have an attorney, and that he "did not knowingly and intelligently waive his rights" because he did not "comprehend[] what was being told to him."

2

During the hearing, the State called Officer Martha Ibarra to the stand to discuss her recollections of when she interviewed Serrano. In her testimony, she explained that she recorded her entire conversation with Serrano, that she read Serrano his *Miranda* warnings before she questioned him, that Serrano stated that he understood those rights, that Serrano agreed to waive his rights, and that Serrano signed a card indicating that he understood his rights but agreed to waive them. In addition, Officer Ibarra recalled that later in the interview, she advised Serrano again of his *Miranda* rights and that Serrano again agreed to waive those rights and to continue the interview. Moreover, she explained that during her interaction with Serrano, she did not have any personal knowledge regarding whether Serrano had an attorney.

During Officer Ibarra's testimony, the video of the interview was admitted as an exhibit, and portions of it were played for the district court. The portions played are generally consistent with Officer Ibarra's testimony. The first portion shows Officer Ibarra giving Serrano a paper copy of his *Miranda* warnings for him to read while she read him his rights, chronicles Serrano answering "yes" when asked if he wanted to waive each of his rights, and documents Serrano signing his copy of the warnings and agreeing that he intended to waive his rights. The second portion takes place approximately forty minutes after the first one, and in that portion of the video, Serrano is being questioned by Officer Ibarra and two other officers. One of the other officers stressed that Serrano's level of cooperation would be communicated to the prosecutor and that it would be in his best interest to cooperate, but the officer repeatedly stated that the choice of whether to cooperate was Serrano's to make and that he did not know whether Serrano would be convicted or what type of punishment Serrano might receive. Further, when Serrano asked if his bond would be reduced

3

if he cooperated, the second officer said that he did not know but repeated that his level of cooperation would be communicated to the prosecutor, and the third officer stated that they could not provide an answer to that question. Next, the second officer asked Serrano who his attorney was. In response, Serrano said that he did "not have one." After Serrano stated that he did not have an attorney, the second officer told Serrano that when he gets an attorney, the attorney will be able to discuss with the prosecutor how cooperative he has been, advised Serrano to start telling the truth, and removed the handcuffs from Serrano's wrists, and then Officer Ibarra reread Serrano his *Miranda* rights. When each right was read to him, Serrano stated that he agreed to waive that right, and Serrano signed another document indicating that he intended to waive those rights. Finally, the second portion of the video shows that after Serrano agreed to waive his rights, he began describing events leading up to the offense at issue.

After Officer Ibarra testified, Serrano was called to the stand. In his testimony, Serrano explained that the hearing before the magistrate occurred a few days after he was arrested, that he requested an attorney during the hearing, that his request was "entered into the records" two days later, and that three days after he requested an attorney, several officers came to his cell and told him that they were going to take him to see his attorney. Moreover, Serrano recalled that instead of taking him to see an attorney, the officers took him to the police station for questioning. Further, Serrano related that he cannot read well, that he did not really understand what was going on when Officer Ibarra asked him about his rights, and that he thought he was brought to the police station to see a lawyer. Finally, Serrano testified that the officers did not tell him who his attorney was until after the interview was over, and he stated that he could not recall whether he ever asked to see an attorney during the interview.

4

At the end of the suppression hearing, the district court explained that Serrano's request for the appointment of an attorney was transmitted two days after he appeared before a magistrate and that Serrano was appointed an attorney when the court received the request. Moreover, the court communicated that it "listened carefully to the tape. The defendant was advised of his right to have an attorney. The Court never heard the defendant request to have an attorney present." In addition, the court explained that Serrano "did not specifically ask to have an attorney . . . before they continued with the interrogation," "never affirmatively invoked his right," and "was read his Miranda rights and . . . twice signed a card indicating he understood." Further, the court explained that it "heard the defendant respond to the questions: Do you understand this right? And every time he indicated affirmatively that he did." Finally, the court concluded that "[t]he law in the State of Texas is such that even with an appointed attorney, if the defendant knows and intelligently waives his right to have an attorney, does not affirmatively assert his right to an attorney, then he has not preserved that right" and determined that "the confession is admissible."

**STANDARD OF REVIEW**

"Appellate courts review a trial court's ruling on a motion to suppress by using a bifurcated standard, giving almost total deference to the historical facts found by the trial court and analyzing de novo the trial court's application of the law." *State v. Le*, 463 S.W.3d 872, 876 (Tex. Crim. App. 2015). Under that standard, the record is "viewed in the light most favorable to the trial court's determination, and the judgment will be reversed only if it is arbitrary, unreasonable, or 'outside the zone of reasonable disagreement.'" *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014) (quoting *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)). Moreover, the

5

trial court's ruling on the motion will be upheld if it is correct under any theory of law regardless of whether the trial court based its ruling on that theory, and the "ruling will not be reversed based on a legal theory that the complaining party did not present to" the trial court. *Id.* at 732. Further, the trial court is the exclusive and sole judge of the credibility of the evidence and witnesses presented during the suppression hearing, "particularly where the motion is based on the voluntariness of a confession," and "great deference is accorded to the trial court's decision to admit or exclude such evidence." *Delao v. State*, 235 S.W.3d 235, 238 (Tex. Crim. App. 2007). Accordingly, the trial court's ruling will only "be overturned on appeal where a flagrant abuse of discretion is shown." *Id.* For determinations regarding whether an accused has invoked his right to counsel, reviewing courts should use an objective standard "[t]o avoid difficulties of proof and to provide guidance to officers conducting interrogations." *Davis v. United States*, 512 U.S. 452, 458-59 (1994). Under that standard, the accused "must unambiguously request counsel" during an interrogation, *id.* at 459, and courts "view the totality of circumstances from the viewpoint of the objectively reasonable police officer conducting custodial interrogation," *Pecina v. State*, 361 S.W.3d 68, 79 (Tex. Crim. App. 2012).

## DISCUSSION

**Delays and Efficacy of Serrano's Waiver of *Miranda* Rights**

In his first issue on appeal, Serrano contends that the district court should have suppressed the statements that he made when he was questioned by the police. When presenting this claim, Serrano asserts that the State created "an improper compelling environment for interrogation," that he incriminated himself while he was subjected to the compelling environment,

6

and that the *Miranda* warnings did "not have the capacity to neutralize this improper State compulsion." In particular, Serrano argues that before his interrogation by the police, various statutory deadlines outlined in the Code of Criminal Procedure were violated and that those violations prevented him from meeting with a court-appointed attorney until after he was questioned by the police. Moreover, Serrano asserts that but for that delay, he would have met with an attorney and postulates that after receiving advice from the attorney, he would not have agreed to talk to the police. In addition to asserting that his request for an attorney was improperly delayed, Serrano contends he was unaware of who his attorney was when the police questioned him several days after he made the request and was not given notice that there might be a delay in the appointment process. For these reasons, Serrano insists that his waiver of his *Miranda* warnings during the interrogation was unknowing and invalid.

Regarding the allegedly improper delays, Serrano notes that article 15.17 of the Code of Criminal Procedure requires that "the person . . . having custody of the person arrested shall without unnecessary delay, but not later than 48 hours after the person is arrested, take the person arrested or have him taken before some magistrate . . . to provide more expeditiously to the person arrested the warnings described by this article." Tex. Code Crim. Proc. art. 15.17(a); *see also id.* (setting out warnings that magistrate must give person who is arrested). In addition, Serrano notes that article 15.17 requires a magistrate to inform an individual of his right to request and of the procedures for requesting the appointment of counsel and requires a magistrate who does not have the authority to appoint counsel to "transmit[] or cause to be transmitted . . . the forms requesting the appointment of counsel" no "later than 24 hours after the person arrested requests appointment

7

of counsel." *Id.* However, Serrano notes that he was not taken before a magistrate or given his magistrate's warnings until approximately 14 hours after the 48-hour deadline and that his request for the appointment of counsel was not transmitted within the 24-hour deadline and was instead transmitted 48 hours after his request, which Serrano asserts resulted in his appointed attorney not receiving notice of the appointment until the day of his interview with the police.

To the extent that Serrano asserts that the failure to provide him with magistrate's warnings within the statutory deadline affected the validity of his decision to waive his *Miranda* rights, we note that the Code of Criminal Procedure provides that an oral or written statement made by an accused "as a result of custodial interrogation" is admissible if the accused "prior to making the statement, *either* received" the warnings from a magistrate *or* received a warning setting out his *Miranda* rights "from the person to whom the statement is made," *see id.* art. 38.22 §§ 2-3 (emphasis added); *see also id.* art. 38.22, § 3 (explaining that for oral statements, warning must be made "during the recording"), and that "a violation of the Article 15.17 requirement will not vitiate an otherwise voluntary confession if the arrestee was properly advised of his *Miranda* rights," *see Fletcher v. State*, 960 S.W.2d 694, 701 (Tex. App.—Tyler 1997, no pet.). The record before the district court when it ruled on the motion to suppress showed that Serrano was provided with his *Miranda* warnings before he was questioned by the police, that Serrano agreed to waive those rights, and that he was read those rights once more later in the interrogation, waived those rights again, and elected to continue talking to the officers.[1]

---

[1] The probable-cause affidavit filed in this case asserts that Serrano was also given his *Miranda* warnings at the time of his arrest.

Moreover, although Serrano correctly highlights that the two deadlines at issue were not complied with, we note that the delays created by those failures are relatively minor given that the first deadline was missed by 14 hours and that the second deadline was missed by 24 hours. Furthermore, the failure to bring an individual who has been arrested before a magistrate in a timely manner does not invalidate a confession unless there is proof of a causal connection between the confession and the delay, *see Rocha v. State*, 16 S.W.3d 1, 29-30 (Tex. Crim. App. 2000) (Holland, J., concurring); *Cantu v. State*, 842 S.W.2d 667, 680 (Tex. Crim. App. 1992), and the defendant bears the burden of establishing that connection, *State v. Vogel*, 852 S.W.2d 567, 570 (Tex. App.—Dallas 1992, pet. ref'd). Although Serrano speculates on appeal that he would not have talked to the police if he had been given the opportunity to meet with a lawyer before his interview, nothing in the video recording or the testimony presented during the suppression hearing demonstrated a causal link between the delays at issue and his confession.

Regarding whether his waiver was invalid because he requested that he be appointed counsel during the article 15.17 hearing and because he was not informed when his attorney would be appointed, the court of criminal appeals addressed a similar issue recently. *See Pecina*, 361 S.W.3d 68; *see also Montejo v. Louisiana*, 556 U.S. 778, 787-88, 797 (2009) (overruling prior precedent that held that invocation of counsel at preliminary hearing should be treated as invocation of right to counsel at every critical stage of prosecution). In *Pecina*, the defendant asked to be appointed an attorney during his article 15.17 hearing, and after the hearing, police officers questioned the defendant about his wife's murder. 361 S.W.3d at 72. Prior to beginning their questioning, the officers read Pecina his *Miranda* warnings, and Pecina waived his rights and

9

"signed a card that listed his *Miranda* rights." *Id.* Moreover, Pecina never asked to stop the interview or to speak with an attorney. *Id.* at 73.

When evaluating the propriety of admitting statements that Pecina made during the interview, the court explained that a "request for an attorney at an arraignment, initial appearance, or Article 15.17 hearing is a request for the guiding hand of counsel for all judicial criminal proceedings" and that if the defendant also wishes to invoke his right to counsel during a subsequent "custodial interrogation, he may certainly do so . . . by invoking that right . . . when law enforcement . . . embark upon custodial interrogation." *Id.* at 78. Accordingly, the court explained "that a defendant's invocation of his right to counsel at his Article 15.17 hearing says nothing about his possible invocation of his right to counsel during later police-initiated custodial interrogation" and that a defendant who has appeared before a magistrate may invoke his right to counsel "for purposes of custodial interrogation when the police or other law-enforcement agents approach him and give him his *Miranda* warnings." *Id.* In light of the preceding, the court concluded that "[u]nder the totality of the circumstances," "an objective and reasonable police officer, conducting a custodial interrogation, would conclude that appellant had voluntarily waived" his right "to counsel for purposes of the custodial questioning." *Id.* at 80; *see also id.* (explaining that "the police may not continue or re-initiate custodial interrogation of a suspect who has previously requested assistance of counsel *after the police informed him of his right to counsel at the beginning of a custodial interrogation*").

We believe that the analysis from *Pecina* applies to the facts of this case. Although Serrano requested the appointment of an attorney when he appeared before a magistrate, he did not invoke his right to counsel at any time during his custodial interrogation and did not inquire about

10

when his counsel would be appointed, and he waived his *Miranda* rights and signed cards demonstrating his intent to waive those rights on two occasions before making self-incriminating statements. Moreover, even though Serrano testified that he did not understand that he was waiving his rights, Officer Ibarra testified that Serrano understood that he was waiving his rights and voluntarily chose to talk with the officers after waiving his rights. In resolving this apparent conflict and when making the requisite credibility determinations, the district court was aided by portions of the recording that show Serrano agreeing to waive his rights on two separate occasions and that show Serrano interacting with the police officers and responding to their questions. Furthermore, nothing in the record from the suppression hearing or in the video indicates that Serrano's statements were not freely and voluntarily made. *See* Tex. Code Crim. Proc. arts. 38.21 (providing that statement made by accused may be admitted into evidence "if it appears" that statement "was freely and voluntarily made without compulsion or persuasion"), .22, § 3 (setting out requirements for admitting oral statement made during custodial interrogation); *see also Oursbourn v. State*, 259 S.W.3d 159, 172-73 (Tex. Crim. App. 2008) (discussing when accused makes knowing, intelligent, and voluntary waiver of rights during custodial interrogation); *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995) (explaining that in absence of evidence showing coercive conduct on part of police causally related to confession, there is no basis to conclude that police deprived defendant of due process). On the contrary, as summarized above, the video shows that the officers repeatedly stated that it was Serrano's choice whether to cooperate, that the officers did not threaten Serrano, that the officers explained that they could not promise that he would gain any benefit from his cooperation or that his bond would be reduced, and that the officers removed Serrano's handcuffs before he made the incriminating statements.

11

For these reasons and under the totality of the circumstances, we believe that an objective and reasonable police officer would conclude that Serrano waived his *Miranda* rights, including his right to counsel, and that his waiver of his rights was not invalidated by any improperly compelling environment that was allegedly created by the State. Accordingly, we conclude that the district court did not abuse its discretion by refusing to suppress the statements that he made on the recording and overrule Serrano's first issue on appeal.[2]

---

[2] Without citation to any controlling Texas case law, Serrano also asserts in his first issue on appeal that he should have been provided with counsel when he appeared before the magistrate because the magistrate transformed the hearing to "a critical stage requiring [his] representation under Section 10 of the Texas Constitution when his bail was set unconstitutionally high in the amount of $200,000." In addition, Serrano contends that the imposition of such a high bail amount added to the "environment of compulsion that [he] was subjected to when he made" the statements at issue and that during the interview the officers used the amount of the bail to coercively suggest that he was guilty of a serious offense and should confess.

Although the Supreme Court specifically determined that a hearing in which an accused is informed of the charges against him, in which a defendant is given warnings under article 15.17, and in which bail is determined "marks the start of adversary judicial proceedings that trigger attachment of the . . . right to counsel," the Supreme Court also explained that the hearing "is not itself a critical stage." *Rothgery v. Gillespie Cnty.*, 554 U.S. 191, 199, 212-13 (2008); *see Franks v. State*, 90 S.W.3d 771, 789 (Tex. App.—Fort Worth 2002, no pet.) (stating that hearing before magistrate for purposes of receiving article 15.17 warnings is not arraignment or critical stage and that arraignment occurs after filing of formal charges); *see also* Tex. Code Crim. Proc. arts. 26.01 (providing that arraignment for felony cases occurs after indictment), .03 (outlining that no arraignment will take place until copy of indictment is served on defendant). Accordingly, the Supreme Court explained that at that point, "counsel must be appointed within a reasonable time after attachment to allow for adequate representation at any critical stage before trial, as well as at trial itself." *Rothgery*, 554 U.S. at 212; *see Clark v. State*, No. 03-09-00644-CR, 2011 Tex. App. LEXIS 5160, at *11 (Tex. App.—Austin July 8, 2011, pet. ref'd) (mem. op., not designated for publication); *see also Ex parte Mortland*, Nos. 03-10-00449-CR, -00450-CR, 2011 Tex. App. LEXIS 6378, at *2 (Tex. App.—Austin Aug. 11, 2011, pet. ref'd) (mem. op., not designated for publication) (clarifying that Supreme Court has not held that accused has right to counsel at initial appearance before judicial officer). As set out earlier, Serrano was appointed an attorney within a few days of the hearing and several months before the start of trial. Moreover, the fact that an appointed attorney could have contested the amount of bail set "does not convert the [hearing] into a critical stage." *See*

12

**Delay in Serrano's Release and Amount of his Bail**

In his second issue on appeal, Serrano contends that various constitutional and statutory provisions regarding bail determinations were not complied with both before and during his bail hearing. As set out above, during the hearing, the magistrate set Serrano's bail at $200,000. In his brief, Serrano contends that the bail amount was excessive and violated the prohibition in the Texas Constitution regarding the imposition of excessive bail. *See* Tex. Const. art. I, § 13. Moreover, Serrano goes through the factors listed in the Code of Criminal Procedure that courts are to consider when making bail determinations and asserts that those factors compel a determination that the amount of bail was unreasonably excessive in this case. *See* Tex. Code Crim. Proc. art. 17.15 (listing factors for court to consider). In addition, Serrano notes that article 17.033 of the Code of Criminal Procedure provides that "a person who is arrested without a warrant and who is detained in jail must be released on bond, in an amount not to exceed $10,000, not later than the 48th hour after the person's arrest if the person was arrested for a felony" and if no probable-cause determination has been made. *Id.* art. 17.033(b). That provision also provides that if an individual "is unable to obtain a surety for the bond or unable to deposit money in the amount of the bond, the person must be released on personal bond." *Id.* In light of this statutory language, Serrano contends that he should have been released within 48 hours of his arrest and that his bail should have been set

---

*Green v. State*, 872 S.W.2d 717, 722 (Tex. Crim. App. 1994); *see also id.* (explaining that "the traditional method of attacking excessive bail is by application of writ of habeas corpus" and that defendant did not "claim that he was deprived of counsel to represent him in any habeas corpus action to contest his bail"). Furthermore, to the extent that Serrano challenges the amount of his bail and asserts that the amount of his bail had an impermissibly coercive impact on him, those claims are addressed in his second issue.

13

at $10,000 or less because he was arrested without a warrant.[3]  Furthermore, Serrano contends that the imposition of the unreasonably high bail amount contributed to the "improper compelling environment for interrogation" and was used to pressure him to make an involuntary confession.[4] For those reasons, Serrano again urges that his statements should have been suppressed.

To the extent that Serrano is challenging on appeal the amount of his bail, any dispute regarding the amount of his bail became moot after Serrano was convicted.  *See Lamar v. State*, No. 05-04-00741-CR, 2005 Tex. App. LEXIS 6267, at *16 (Tex. App.—Dallas Aug. 9, 2005, pet. dism'd) (not designated for publication); *Oldham v. State*, 5 S.W.3d 840, 846 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd); *see also* Tex. Const. art. I, § 11a (authorizing courts to deny bail

---

[3] In presenting this claim, Serrano refers to various documents that were included in an appendix to his initial brief but not his amended brief.  Those documents purport to establish that an arrest warrant was issued five days after his arrest, that his bail was lowered to $50,000 approximately one month after his arrest by agreement of the parties, and that he was able to pay that bail amount.  In addition to referring to his original appendix, Serrano also asserts that after he paid the reduced bail, he was arrested again and that his bail was set at $60,000.  Based on this information, Serrano insists that his bond was set excessively high for the impermissible purpose of coercing him to confess.  However, the documents included in his appendix are not part of the record in this case, and nothing in the record before this Court demonstrates that Serrano was subsequently arrested or that his bail for his subsequent arrest was set at $60,000.

[4] As support for that proposition, Serrano refers to the fact that the State initially recommended a bond amount of $125,000 but crossed through that amount and changed its recommendation to $200,000, points to the portion of the video that was played during the suppression hearing where Serrano asks if his cooperation will result in a lower bail amount, and discusses portions of the video that were not played during the suppression hearing in which the officers communicated that the amount of bail set was indicative of how much trouble he was in.  *See Black v. State*, 362 S.W.3d 626, 635 (Tex. Crim. App. 2012) (providing that "appellate review of [a trial court's] ruling on the motion to suppress is ordinarily limited to that evidence presented at the pretrial hearing—the evidence that was before the court at the time of its decision").  In addition, Serrano urges that the bail amounts for his prior felonies were significantly less than $200,000; however, no evidence regarding bail in his prior offenses was presented during the suppression hearing, and there is no information in the record in this case regarding those prior bail amounts.

entirely for accused "who has been theretofore twice convicted of a felony"). Similarly, to the extent that Serrano is asserting on appeal that his bail should have been reduced to $10,000 or less and that he should have been released because he was arrested without an arrest warrant and because he had been confined for more than 48 hours, that alleged error was also mooted after Serrano was indicted and convicted. *See Ex parte Martinez-Hernandez*, No. 04-11-00863-CR, 2012 Tex. App. LEXIS 7742, at *2-3 (Tex. App.—San Antonio Sept. 12, 2012, no pet.) (mem. op., not designated for publication) (concluding that complaint that defendant should have been released under article 17.033 on bond amount that was no higher than $10,000 within 48 hours of his arrest when no probable-cause determination had been made was moot because defendant had been indicted); *cf. Rowe v. State*, Nos. A14-91-00529-CR, -00532-CR, 1991 Tex. App. LEXIS 2426, at *2-3 (Tex. App.—Houston [14th Dist.] Oct. 3, 1991, no pet.) (not designated for publication) (determining that court did not have jurisdiction over habeas application regarding trial court's alleged failure to reduce amount of bail because issue became moot when defendant was convicted). Finally, to the extent that Serrano argues that the amount of his bail and the fact that he was not released after being confined for 48 hours served to create an oppressive environment in which he was compelled to make an involuntary confession, Serrano did not present that argument to the district court during the suppression hearing. *See Gomez v. State*, 459 S.W.3d 651, 668 (Tex. App.—Tyler 2015, pet. ref'd) (concluding that defendant did not preserve error because his argument to trial court "at the hearing on the motion to suppress did nothing to bring the trial court's attention to the issue he now seeks to raise"); *Rothstein v. State*, 267 S.W.3d 366, 373-74 (Tex. App.—Houston [14th Dist.] 2008,

15

pet. ref'd) (determining that defendant did not preserve issue for appeal where his argument did not comport with objection raised in motion to suppress or at suppression hearing).

For all of these reasons, we overrule Serrano's second issue on appeal.

## CONCLUSION

Having overruled all of Serrano's issues on appeal, we affirm the district court's judgment of conviction.

_____

David Puryear, Justice

Before Justices Puryear, Goodwin, and Bourland

Affirmed

Filed:   November 6, 2015

Do Not Publish