ACCEPTED
04-14-00644-CR
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
4/7/2015 3:11:57 PM
KEITH HOTTLE
CLERK

## No. 01-14-00644-CR

IN THE FIRST COURT OF
APPEALS OF TEXAS
HOUSTON, TEXAS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS

4/7/2015 3:11:57 PM

KEITH E. HOTTLE
Clerk

**ELTON ANTHONY BRANCH, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

ON APPEAL FROM THE 399th JUDICIAL DISTRICT COURT
OF BEXAR COUNTY, TEXAS
CAUSE NUMBERS 2013-CR-7555

## BRIEF FOR THE STATE

**NICHOLAS "NICO" LAHOOD**
Criminal District Attorney
Bexar County, Texas

**STEVEN SPEIR, DANIEL WALKER**
Assistant Criminal District Attorney
Bexar County, Texas
**MARY BETH WELSH**
Assistant Criminal District Attorney
Bexar County, Texas
Paul Elizondo Tower
101 W. Nueva, 7TH Floor
San Antonio, Texas 78205
mwelsh@bexar.org
(210) 335-2782
(210) 335-2436 (fax)
State Bar No. 00785215
(On Appeal)

## ORAL ARGUMENT WAIVED

# TABLE OF CONTENTS

**PAGE(S)**

**Table of Contents**

TABLE OF AUTHORITIES.................................................................................iii

BRIEF FOR THE STATE............................................................................... 1

RULE 38.2(a)(1)(B) STATEMENT ................................................................. 2

STATE'S RESPONSE TO APPELLANT'S
    FIRST POINT OF ERRROR..............................................................................2

Examining the evidence in the light most favorable to the verdict,  a rational trier of fact could have found beyond a reasonable doubt that appellant committed aggravated assault of Clifton Wallace while using or exhibiting a deadly weapon; namely: a knife.

STANDARD OF REVIEW ...............................................................................2

SUMMARY OF THE EVIDENCE ..........................................................................4

ARGUMENT AND AUTHORITIES..................................................................13

APPLICATION ...........................................................................................15

STATE'S RESPONSE TOAPPELLANT'S
    SECOND POINT OF ERROR ........................................................................17

The probative value outweighed any prejudice that might have possibly arisen from these photographs. Therefore, the trial court did not abuse its discretion in admitting the photographs.

STANDARD OF REVIEW .............................................................................17

ARGUMENT AND AUTHORITIES..................................................................17

APPLICATION ...............................................................................................19

STATE'S RESPONSE TO APPELLANT'S
    THIRD POINT OF ERROR ......................................................................21

The testimony was not hearsay because it not offered for the truth of the matter asserted. Furthermore, the statement, if hearsay, qualified as a present sense impression exception to the hearsay rule as well as an excited utterance. Finally, in light of the entire record, the admission of Warren's testimony regarding what he yelled out to Steve, if error, was harmless.

STANDARD OF REVIEW ...............................................................................22

ARGUMENT AND AUTHORITIES.................................................................22

APPLICATION ...............................................................................................23

CONCLUSION.................................................................................................27

CERTIFICATE OF SERVICE .........................................................................28

CERTIFICATE OF COMPLIANCE.................................................................28

# Table of Authorities

**Federal Cases**                                                                          **Page(s)**

*Jackson v. Virginia*, 443 U.S. 307 (1979)....................................................... 2, 3, 16
*Tibbs v. Florida*, 457 U.S. 31 (1982)......................................................................3


**Texas Cases**
*Alexander v. State*, 740 S.W.2d 749 (Tex. Crim. App. 1987) ................................15
*Alexander v. State*, 820 S.W.2d 821 (Tex. App. — Waco 1991, pet. ref'd) .... 23, 24
*Bell v. State*, 877 S.W.2d 21 (Tex. App. — Dallas 1994, pet ref'd) ................ 23, 24
*Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010) .......................................2
*Brooks v. State*, 990 S.W.2d 278 (Tex. Crim. App. 1999) .....................................25
*Casey v. State*, 215 S.W.3d 870 (Tex. Crim. App. 2007)................................. 17, 21
*Clayton v. State*, 235 S.W.3d 772 (Tex. Crim. App. 2007)...................................3, 16
*Dinkins v. State*, 894 S.W.2d 330 (Tex. Crim. App. 1995) .....................................22
*Drake v. State*, 860 S.W.2d 182 (Tex. App. — Houston [14 Dist.] 1993, pet. ref'd)
.............................................................................................................................24
*Earls v. State*, 707 S.W.2d 82 (Tex. Crim. App. 1986)..........................................15
*Erazo v. State*, 144 S.W.3d 487 (Tex. Crim. App. 2004) ................................. 18, 19
*Esparza v. State*, 31 S.W.3d 338 (Tex. App. — San Antonio 2000, no pet.) .........25
*Fletcher v. State*, 960 S.W.2d 694 (Tex. App. Tyler 1997)....................................24
*Gigliobianco v. State*, 210 S.W.3d 637 (Tex. Crim. App. 2006) ...........................18
*Guidry v. State*, 9 S.W.3d 133 (Tex. Crim. App. 1999) .........................................22
*Harris v. State*, 736 S.W.2d 166 (Tex. App. — Houston [14th Dist.] 1987, no pet.)
.............................................................................................................................25
*Hooper v. State*, 214 S.W.3d 9 (Tex. Crim. App. 2007) ..........................................3
*Johnson v. State*, 673 S.W.2d 190 (Tex. Crim. App. 1984) ...................................14
*Johnson v. State*, 967 S.W.2d 410 (Tex. Crim. App. 1998) ...................................26
*King v. State*, 29 S.W.3d 556 (Tex. Crim. App. 2000)..............................................2
*Livingston v. State*, 739 S.W.2d 311 (Tex. Crim. App 1987)..................................24
*Lockwood v.* State, 237 S.W.3d 428 (Tex. App. — Waco 2007, no pet.)...............15
*McDonald v. State*, 179 S.W.3d 571 (Tex. Crim. App. 2005) ................................22
*McFarland v. State*, 928 S.W.2d 482 (Tex. Crim. App. 1996) ................................3
*McGee v. State*, 774 S.W.2d 229 (Tex. Crim. App. 1989)......................................15
*Moreno v. State*, 755 S.W.2d 866 (Tex. Crim. App. 1988).......................................3
*Prible v. State*, 175 S.W.3d 724 (Tex. Crim. App. 2005)................................. 17, 21
*Rabbani v. State*, 847 S.W.2d 555 (Tex. Crim. App. 1992)....................................25
*Reese v. State*, 33 S.W.3d 238 (Tex. Crim. App. 2000) ............................. 17, 18, 19

*Rice v. State*, 801 S.W.2d 16 (Tex. App. — Fort Worth 1990, pet. ref'd)..............14
*Shuffield v. State*, 189 S.W.3d 782 (Tex. Crim. App. 2006) ...................... 17, 19, 21
*Sonnier v. State*, 913 S.W.2d 511 (Tex. Crim. App. 1995) .......................................3
*Threadgill v. State*, 146 S.W.3d 654 (Tex. Crim. App. 2004)................................18
*Williams v. State*, 235 S.W.3d 742 (Tex. Crim. App. 2007) ...................................3
*Williams v. State*, 937 S.W.2d 479 (Tex. Crim. App. 1996) ...................................3
*Willover v. State*, 70 S.W.3d 841 (Tex. Crim. App. 2002)....................................22

## Statutes

Tex. Pen. Code §22.01(a)(1)(West 2013) ................................................................14
Tex. Pen. Code §22.02(a)(2)(West 2013) ...............................................................14

## Other Authorities

2A STEVE GOODE et al., *Texas Practice Series: Courtroom Handbook on Texas Evidence* §801(a)-(d) (3) ( 2013 ed.) ....................................................................23

## Rules

*Fowler v. State*, 958 S.W.2d 853 (Tex. App. — Waco 1997), *aff'd*, 991 S.W.2d 258 (Tex. Crim. App. 1999)......................................................................................26
TEX. R. APP. P. 38.2(a)(1)(B) ....................................................................................2
Tex. R. App. P. 44.2(b)............................................................................................26
Tex. R. Evid. 401.....................................................................................................17
Tex. R. Evid. 403.....................................................................................................18
Tex. R. Evid. 801(d)................................................................................................22
Tex. R. Evid. 803(1).................................................................................................25
Tex.R.Evid. 803(2)...................................................................................................26

## No. 04-14-00644-CR

| | | |
|---|---|---|
| **Elton Anthony Branch,** | § | **In the Fourth Court** |
| **Appellant** | § | |
| **v.** | § | **Of Appeals** |
| **The State of Texas** | § | |
| **Appellee** | § | **San Antonio, Texas** |

### BRIEF FOR THE STATE

### TO THE HONORABLE COURT OF APPEALS:

Now comes, Nicholas "Nico" LaHood, Criminal District Attorney of Bexar County, Texas, and files this brief for the State. Appellant, Anthony Branch, was charged by indictment as a repeater for the offense of aggravated assault with a deadly weapon, cause number 2013-CR-7555 (C.R. at 4). Trial was before a jury in the 399th Judicial District Court of Bexar County, Texas, the Honorable, Ray J. Olivarri, Jr., judge presiding. Appellant was found guilty of aggravated assault as charged in the indictment (C.R. at 38). Appellant pled true to the enhancement and the jury assessed punishment at 25 years confinement (C.R. at 50, 55). The Trial Court's Certification of Defendant's Right of Appeal was filed indicating this was not a plea bargain and appellant has the right to appeal (C.R. at 54). Notice of appeal was filed (C.R. at 62).

1

## RULE 38.2(a)(1)(B) STATEMENT

The State challenges the factual assertions contained in appellant's brief pursuant to Rule 38.2(a)(1)(B) of the Texas Rules of Appellate Procedure. The State will provide its quotations of evidence and/or summary of evidence adduced from the record in its response contained herein.

## STATE'S RESPONSE TO APPELLANT'S
## FIRST POINT OF ERROR

In in his first point of error, appellant contends that the evidence is not legally sufficient to support his conviction for aggravated assault with a deadly weapon (Appellant's brief at 3).

## STANDARD OF REVIEW

On a challenge of the legal sufficiency of the evidence, the reviewing court must review all the evidence, whether direct or circumstantial, in the light most favorable to the verdict and determine whether any rational trier of fact could have found all the essential elements of the offense, and/or the challenged finding, beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010); *King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000).

Under the legal sufficiency standard, the jury is the exclusive judge of the credibility of the witnesses, the weight to be given their testimony and may choose to believe all, some, or none of their testimony or other evidence presented. *See*

2

*McFarland v. State*, 928 S.W.2d 482, 496 (Tex. Crim. App. 1996); *Sonnier v. State*, 913 S.W.2d 511, 514 (Tex. Crim. App. 1995). An appellate court presumes that the factfinder resolved any conflicting inferences in favor of the verdict and defers to that resolution. *See Jackson*, 443 U.S. at 326; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). The reviewing court's duty is not to reweigh the evidence from reading a cold record but to "position itself as a final, due process safeguard ensuring only the rationality of the factfinder." *Williams v. State*, 937 S.W.2d 479, 483 (Tex. Crim. App. 1996); *Matamoros v. State*, 901 S.W.2d 470, 474 (Tex. Crim. App. 1995); *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988).

An appellate court determines whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *See Clayton*, 235 S.W.3d at 778 (*citing Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). An appellate court also defers to the factfinder's evaluation of the credibility of the evidence and weight to give the evidence. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

If an appellate court finds the evidence insufficient under this standard, it must reverse the judgment and enter an order of acquittal. *See Tibbs v. Florida*, 457 U.S. 31, 41 (1982).

Because appellant has raised a sufficiency issue, a brief summary of the evidence will be helpful and is provided below.

## SUMMARY OF THE EVIDENCE

Clifton Wallace works part time doing home health and he works as a security guard at the Kiolbasa plant (3R.R. at 48, 49). As a security guard, Mr. Wallace wears a uniform but does not carry a weapon (3R.R. at 51). Part of Mr. Wallace's job is to patrol the exterior of the plant within the fence on foot (3R.R. at 52).

There are roughly 50 people that work at the plant and Mr. Wallace is at least familiar with them by face and typically they wear regular clothes but with a smock and safety boots (3R.R. at 53, 54). On June 6th, 2013, Mr. Wallace was on patrol at about 11:00 pm when he observed a man come in who was not wearing the usual work attire and Mr. Wallace had never seen him before (3R.R. at 55). Because there is limited parking, Mr. Wallace had parked his vehicle right outside the gate and after completing one of his rounds he went out to the car to mark his log book when he saw the man right outside the gate (3R.R. at 56). Mr. Wallace lost sight of him when the man walked through the gate but once he walked back in the gate Mr. Wallace saw him again walking away from the building towards the parking lot (3R.R. at 57, 58, 59).

The man was carrying what Mr. Wallace thought was a device for a car alarm because he could hear a car alarm going off and the man was holding out the device and pressing it, at least that was it appeared he was doing (3R.R. at 59, 60). The man went to a vehicle and when Wallace approached the vehicle the man was in the driver's seat, lying down across to the passenger seat, looking very suspicious (3R.R. at 60, 61).

Mr. Wallace was at the car door when he asked the man what he was doing (3R.R. at 61). The man said he was just in the car and that it was his vehicle (3R.R. at 62). Mr. Wallace asked him to step out of the vehicle and show some identification (3R.R. at 62). When the man stepped out of the vehicle he had some kind of tool in his hand but Mr. Wallace could not tell exactly what it was, he just assumed it was a screwdriver or something (3R.R. at 62, 63). The man did not provide any identification and became confrontational, yelling in a raised voice something like get off me man or get away from me, man (3R.R. at 64). He appeared to be agitated and at this point they were about three feet from each other (3R.R. at 64). Mr. Wallace asked the man about the backpack he was carrying because Mr. Wallace recognized the backpack as one that belonged to the actual owner of the vehicle, one of the plant maintenance employees (3R.R. at 65, 66, 67).

Mr. Wallace tried to get the backpack away from the man as he tried to walk away and that was when Mr. Wallace noticed what he had in his hand was a knife (3R.R. at 67). Mr. Wallace asked the man what he was going to do with the knife and the man started swinging the knife towards Mr. Wallace (3R.R. at 68). Mr. Wallace did not have anything to protect himself so he just charged at him as hard as he could and everything went flying (3R.R. at 68).

Mr. Wallace saw an individual he knew only as Steve and he told him that there was someone trying to break into a vehicle and he could use his help (3R.R. at 73). When Wallace hit the man full force they both fell to the ground and that was when someone pointed out that he was bleeding (3R.R. at 76). The man got up and staggered away (3R.R. at 77). Mr. Wallace didn't really see anything else once he realized he had been stabbed (3R.R. at 78). One of the co-workers helped Wallace by applying pressure until EMS arrived (3R.R. at 83). Wallace was transported to University Hospital where he was treated (3R.R. at 85).

Mr. Wallace was shown several photos but was unable to pick out, with certainty, the individual that stabbed him (3R.R. at 95). Wallace actually recognized one person but there was another individual that looked a lot like him so Wallace wasn't comfortable picking either of the two (3R.R. at 96).

Officer Connell responded to the call for a stabbing and when he arrived on the scene the victim, Clifton Wallace, was being treated (3R.R. at 15, 17, 19). Two

witnesses were located, Steven Moreno and Saul Monsivais (3R.R. at 19). Officer Connell learned that a suspect had been apprehended so he drove Steven Moreno to that location to do a field identification (3R.R. at 19). The witness was then transported to the night detective's office to give a statement and the suspect was transported to the night magistrate's office (3R.R. at 21). The suspect had a fresh injury on his face and on his back (3R.R. at 25). Appellant was the suspect (3R.R. at 26).

Steve Moreno works at the Kiolbassa plant in the Maintenance department (3R.R. at 142). Mr. Moreno was getting ready to clock out for the day when he heard Cliff calling his name and when Moreno turned around he saw Cliff struggling in the parking lot about 25-30 feet from the door (3R.R. at 143, 146). Moreno called for another maintenance worker, Saul, to come help, and then he ran to try and help Cliff (3R.R. at 147). When Cliff let go of appellant he ran so Mr. Moreno chased him (3R.R. at 147, 156). Appellant was running full force and did not see the cable at the transmission shop next door and ran right into it, flipped over it and landed on his back but got up and kept running at which time Mr. Moreno stopped giving chase and went back to check on Cliff (3R.R. at 148, 150, 151).

Moreno saw blood on Cliff's shirt so he got some towels and gloves so he could apply pressure (3R.R. at 151). One of the officers relieved him and told him

7

to go over to the transmission shop and wait with Chris Barnes and Saul (3R.R. at 151).

After a while, Moreno and Saul were taken in separate cars to where they had apprehended appellant (3R.R. at 152). From the front seat of the patrol car, Moreno identified appellant as the same one he had seen struggling with Cliff (3R.R. at 152). During the struggle appellant had on a white shirt, white shorts and he was wearing tennis shoes (3R.R. at 157). The white shirt was torn during the struggle and he lost one of the shoes when he fell over the cable (3R.R. at 157, 158).

Saul Nareja Monsivais also works in maintenance at the Kiolbassa plant (3R.R. at 173, 174). Saul was completing paperwork at the end of his shift when he heard Moreno shout his name so he ran outside the building and he saw Cliff, the security guard, and appellant fighting (3R.R. at 176, 177, 178, 179, 190). Appellant was taller than Saul, who is 5'6" and he was wearing a white shirt, white shorts and he had short hair and a lot of tattoos (3R.R. at 180, 181, 182).

The struggle stopped when appellant ran away and Cliff was left lying on the ground (3R.R. at 182). Moreno ran to get some rags from maintenance and Saul ran to his truck so he could chase after the guy (3R.R. at 182). Saul found him a few blocks away and tried to stop him with the truck (3R.R. at 183). Appellant ran so Saul ran after him but couldn't catch up to him (3R.R. at 184). When appellant

8

tried to run away he and Saul actually ran into each other (3R.R. at 184). Saul tried to grab appellant but couldn't and when he tried to run away from Saul, Saul punched him in the stomach once but that did not stop him (3R.R. at 185, 186). Saul continued to chase appellant on foot until he saw two police officers who he told what he had seen (3R.R. at 186, 187). The officers told him to stop chasing appellant so Saul went back to his truck and returned to the plant (3R.R. at 187). Eventually an officer drove Saul two or three streets away where he identified the appellant (3R.R. at 189, 190).

Christopher Barnes, who works at the Kiolbassa plant as a maintenance technician drives a red four door Subaru and parks on the other side of the transformer right outside the maintenance shop (3R.R. at 203, 204). Typically, Christopher kept his personal things upstairs in the office but this particular night he was in the process of leaving the plant so it was downstairs on a table (3R.R. at 205). Christopher had a black backpack which contained a knife, his watch, some miscellaneous documents and pens (3R.R. at 205).

In the vehicle, the face plate to the stereo had been removed, the dart case was not in the side of the door where it is usually stored and the turning cable and watch that are usually in the console had been taken out as well as the Tom Tom navigation system (4R.R. at 19, 20).

9

At first Cliff appeared to be okay but then Christopher saw that he was bleeding (4R.R. at 22). Steve went to get a chair for Cliff and Christopher called 9-1-1(4R.R. at 22). After the ambulance arrived, Christopher went back inside and that was when he noticed his backpack, with his keys, was gone (4R.R. at 22, 23). At that point Christopher looked over and saw that his car door was open (4R.R. at 23).

There were several items found on the ground, some that did not belong to Christopher and others that were his and were returned to him (4R.R. at 30, 31, 32). A multi-tool knife was taken from the console of Christopher's car but it was not returned (4R.R. at 32, 34). The backpack itself was never returned nor was the military paperwork that was inside (4R.R. at 36).

Officer Christopher Hetrick received a call from dispatch for a cutting in progress and he specifically responded to the information regarding the flight of the possible suspect (4R.R. at 51, 53, 54). The description of the suspect was a black male wearing white shorts (4R.R. at 56). Officer Hetrick spotted appellant, who matched the description, running west (4R.R. at57, 58, 64). Hedrick approached appellant with his gun drawn and told him to lay down on the ground (4R.R. at 58). Instead of cooperating immediately, appellant crouched down in order to conceal something (4R.R. at 59, 60). After appellant put down whatever he had, he laid down on the street (4R.R. at 60). Appellant had blood and grass on

10

him and he was scratched up like he had been in a fight, jumping over fences, those types of things (4R.R. at 61). Officer Hedrick found a pair of sunglasses and the remote to a car stereo in the area (4R.R. at 63).

Officer Barton Borgens also drew his weapon and gave commands to appellant and when he complied Officer Borgens holstered his weapon and handcuffed him (4R.R. at 65, 69, 71). Appellant was placed in Officer Borgens' patrol car and when the detectives indicated they were through, Borgens transported appellant to headquarters (4R.R. at 69, 70). Borgens read appellant his rights (4R.R. at 70).

Detective Kerry Keene found a Leatherman tool and observed that the blade appeared to be bent (4R.R. at 74, 80). The tool was marked and left for CSI to pick it up (4R.R. at 80).

Mike Rohmer marked and collect for evidence from the initial location which included a black left shoe, a watch, and a Leatherman multi-tool (4R.R. at 83, 86, 89, 90). The blade in the multi-tool had obviously hit something hard because it is bent (4R.R. at 93). The knife was open when Mr. Rohmer collected it but he closed it to make it safe (4R.R. at 93).

At the second location, where the stabbing occurred, Mr. Rohmer collected a pair of boxer shorts, various items of clothing, a hat, another shoe and they took some blood swabs (4R.R. at 96, 101, 109). The red cap had a lot of trace on it

11

(4R.R. at 104, 105). From the night CID room, Mr. Rohmer collected a pair of white shorts that appeared to have blood on them (4R.R. at 111).

Detective Vasquez attempted to obtain latent prints from the vehicle's exterior driver side door, the door frame, door handles, windows but was only able to lift what he believed to be good latent prints from the exterior driver side door, interior driver side door, and a GPS laying on the floor (4R.R. at 134, 140). Detective Vasquez also examined the victim who had a puncture would toward the side/back of his thoracic cavity which he sealed with the HyFin chest seal (4R.R. at 144). EMS arrived and provided all further medical care (4R.R. at 145).

Sandra Ruiz, compared legible prints from the outside of the driver's side window to those of appellant and they belonged to appellant (4R.R. at 148, 158).

Detective Landrum spoke to Christopher Barnes the owner of the vehicle that was broken into and during his investigation he was notified that officers had a suspect in custody (5R.R. at 6, 12, 13). The witnesses, Saul Monsivais and Steve Moreno, were transported to the location where the suspect was being held for a field identification (5R.R. at 13, 14). Mr. Moreno and Mr. Monsivais identified the suspect in custody as the one involved in the stabbing (5R.R. at 18, 19).

Detective Landrum observed that appellant appeared to be under the influence of some type of substance, intoxicant (5R.R. at 25, 30). His clothes were dirty, he was shoeless and there appeared to be blood on his clothing which were

collected as evidence (5R.R. at 25. 26). Appellant's clothing included white shorts and shoes, one of which was found where appellant tripped over the wire (5R.R. at 27). Appellant gave a statement denying any involvement (5R.R. at 27, 28). Detective Landrum indicated that a knife can be a deadly weapon (5R.R. at 29, 30).

Detective Roberts spoke with the Mr. Wallace on June 12th and took a statement from him on July 11th (5R.R. at 44, 48, 49). Actually, Mr. Wallace provided an incident report he had prepared for his company and it was done very well so Detective Gutierrez used that report as his statement (5R.R. at 49). Wallace was shown a photo line-up but he was unable to identify anyone (5R.R. at 52). Finger prints from the vehicle that had been burglarized were submitted to identification (5R.R. at 54). Four of appellant's finger prints were a match (5R.R. at 54). The knife was not submitted to test for blood because there were witnesses to the assault (5R.R. at 56). Blood samples from the scene were not submitted because based on the eyewitnesses they knew who the blood came from (5R.R. at 56).

## ARGUMENT AND AUTHORITIES

Appellant was charged by indictment with the offense of aggravated assault with a deadly weapon pursuant to section 22.02(a)(2) of the Texas Penal Code.

A person commits aggravated assault if he commits assault as defined in Section 22.01 of the Texas Penal Code and uses or exhibits a deadly weapon during the commission of the assault. Tex. Pen. Code §22.02(a)(2)(West 2013). A person commits assault if he intentionally, knowingly, or recklessly causes bodily injury to another. Tex. Pen. Code §22.01(a)(1)(West 2013). Based on the allegations in the indictment, the State was required to prove beyond a reasonable doubt that: appellant intentionally, knowingly, or recklessly caused bodily injury to Clifton Wallace by cutting and stabbing him with a knife, that in its manner of use and intended use was capable of causing death and serious bodily injury. (C.R. at 4).

Appellant contends the evidence was insufficient to prove he committed the offense because there was no blood on him from the complainant when he was arrested, and his finger prints on the car don't prove he did the stabbing (Appellant's brief at 3, 4)

In a criminal trial, the State must prove that the accused was the perpetrator, and the accused stands innocent before the court until his identity is established beyond a reasonable doubt. *Rice v. State*, 801 S.W.2d 16, 17 (Tex. App. — Fort Worth 1990, pet. ref'd). Therefore, identification of the defendant as the person who committed the offense charged is part of the State's burden of proof beyond a reasonable doubt. *Johnson v. State*, 673 S.W.2d 190, 196 (Tex. Crim. App. 1984).

14

Identity can be established by direct or circumstantial evidence. *Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986) (noting that victim's misidentification of juror as perpetrator at trial was not fatal where circumstantial evidence, including testimony of officer who arrested defendant at scene, pointed to defendant as perpetrator). Identity may be proved by inferences and no formalized procedure is required for the State to prove identity. *See generally Lockwood v.* State, 237 S.W.3d 428, 432 (Tex. App. — Waco 2007, no pet.). Proof of the accused's identity through circumstantial evidence is not subject to a more rigorous standard than is proof by direct evidence, as both are equally probative. *McGee v. State*, 774 S.W.2d 229, 238 (Tex. Crim. App. 1989). The sufficiency of the evidence is then determined from the cumulative effect of all the evidence. *See Alexander v. State*, 740 S.W.2d 749, 758 (Tex. Crim. App. 1987).

## APPLICATION

In the instant case, Clifton Wallace testified that he saw an individual who did not appear to be employed at the Kiolbassa plant carrying and pressing what appeared to be an alarm remote for a vehicle. When Wallace approached the vehicle whose alarm he heard he saw the individual in the vehicle lying across the seat. Wallace knew that the vehicle did not belong to the individual and Wallace observed he had a backpack that did not belong to him either. Although Wallace initially saw something in the individual's hand, it wasn't until he confronted him

15

and tried to get the backpack that Wallace saw it was a knife. The individual started swinging the knife and Wallace had nothing to protect himself with so he charged the individual as hard as he could. Wallace received a stab wound to the side. No one else was around at the time to inflict this wound except for the individual.

Although Wallace was unable to identify the individual the record shows that appellant was the one at the car in question because his fingerprints were on it. Appellant also had items that taken from the car and from the owner of the car as well as other items. More importantly two eyewitnesses to the assault observed the struggle and identified appellant as being the one involved in the struggle. Appellant ran from the scene and was later apprehended. Steve Moreno and Saul Monsivais, who ran to assist Wallace, made positive identifications of appellant after he was apprehended and in open court.

Examining the evidence in the light most favorable to the verdict, a rational trier of fact could have found beyond a reasonable doubt that appellant committed aggravated assault of Clifton Wallace while using or exhibiting a deadly weapon; namely: a knife. *See Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778.

Accordingly, the evidence is legally sufficient to show that appellant committed aggravated assault.

Appellant's first point of error lacks merit and should be overruled.

16

## STATE'S RESPONSE TO APPELLANT'S
## SECOND POINT OF ERROR

In point of error number two, appellant contends that gruesome photographs were admitted improperly over his objection (Appellant's brief at 5).

## STANDARD OF REVIEW

A trial court's decision to admit or exclude evidence, including photographic evidence is reviewed under an abuse of discretion standard. *See Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007); *Shuffield v. State*, 189 S.W.3d 782, 786 (Tex. Crim. App. 2006); *Prible v. State*, 175 S.W.3d 724, 734 (Tex. Crim. App. 2005). Under an abuse of discretion standard, the appellate court must determine whether the trial court's ruling was so arbitrary that it is outside the zone of reasonable disagreement. *Casey*, 215 S.W.3d at 878. An appellate court determines not only whether the trial judge did in fact conduct the required balancing between probative and prejudicial values but also whether the trial court's determination was reasonable in view of all relevant facts. *Shuffield*, 189 S.W.3d at 787; *Reese v. State*, 33 S.W.3d 238, 241 (Tex. Crim. App. 2000).

## ARUGMENT AND AUTHORITIES

The Texas Rules of Evidence favor admission of all relevant evidence at trial, though these evidentiary rules do provide exceptions that would exclude otherwise relevant and admissible evidence. *See* Tex. R. Evid. 401. Relevant evidence may be excluded if the probative value of the evidence is "substantially

outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex. R. Evid. 403; *Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006). Unfair prejudice occurs when evidence provides "an undue tendency to suggest that a decision be made on an improper basis." *Reese*, 33 S.W.3d at 240. Rule 403 favors admission of relevant evidence and, consequently, it carries the presumption that "relevant evidence will be more probative than prejudicial." *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1991) (en banc).

Like other demonstrative evidence, photographs should assist the factfinder with its guilt or punishment decision; a photograph should add something that is "relevant, legitimate, and logical to the testimony that accompanies it" and that assists the factfinder in its decision-making duties. *Erazo v. State*, 144 S.W.3d 487, 491 (Tex. Crim. App. 2004). If a photograph is genuinely helpful, the photograph is inadmissible only if its emotional and prejudicial aspects substantially outweigh the helpful aspects. *Id.* at 491-92. In general, photographs are admissible if verbal testimony about the matter shown in the photographs would be admissible and the probative value is not outweighed by Rule 403 counter-factors. *Threadgill v. State*, 146 S.W.3d 654, 670-71 (Tex. Crim. App. 2004); *see* TEX. R. EVID. 403.

The Court of Criminal Appeals has provided a nonexclusive list of four factors to consider when analyzing a challenge to evidentiary rulings under Rule 403: (1) the probative value of the evidence; (2) the extent that the evidence may "impress the jury in some irrational, but nevertheless indelible way"; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Shuffield*, 189 S.W.3d at 787; *Montgomery*, 810 S.W.2d at 389-90. Additionally, when considering a trial court's ruling on the admissibility of a photo, the reviewing court should consider the number of photos, the size of the photo, whether the photo is in color, the detail depicted in the photo, the gruesomeness of the photo, whether the body is naked or clothed, and whether the body had been altered in a way that would be detrimental to the appellant. *Shuffield*, 189 S.W.3d at 787; *Erazo*, 144 S.W.3d at 489; *Reese*, 33 S.W.3d at 241.

## APPLICATION

Appellant contends that photographs were admitted improperly over his objection (Appellant's brief at 5). Appellant does not state in his brief which photographs in particular he is complaining about. However, appellant does cite to one portion in the record where State's exhibits 8 through 16 were offered (3R.R. at 79). There was no objection to exhibits 11, 13, and 9 (3R.R.R. at 79). Appellant objected to 8, 10, 12, 14, 15, and 16 based on them being cumulative in violation of rules 401, 402 and 403 (3R.R. at 79, 80). The State argued that the photographs

19

were being offered to depict different angles of the injury and the different stages of treatment received (3R.R. at 80). Appellant argues on appeal that the photographs were cumulative and seems to suggest that they were gruesome (Appellant's brief at 5).

Mr. Warren testified that State's exhibit no. 8 was photograph of himself and it shows where on his body the stab wound was located (3R.R. at 83). State's exhibit 9, depicts the item placed on Mr. Warren's side to hold pressure until the EMT's arrived (3R.R. at 84). State's Exhibit number 10 shows the same protective covering over the stab wound and the EMT's preparing to treat Mr. Warren. (State's Exhibit 10). State's exhibit 12 depicts the EMT using scissors cut off Warren's shirt (3R.R. at 84, 85). State's Exhibit 14 depicts Warrant transferred from the chair he was sitting in to the gurney. State's Exhibit 15 is a less blurry picture of them Warren on the gurney and the EMT's strapping him down for transport. State's exhibit 16 shows Warren as the EMT's prepare to transport him to the hospital (3R.R. at 85).

Although a couple of the photographs might be cumulative there is nothing about the evidence that might have impressed the jury in some irrational, but nevertheless indelible way. Appellant characterizes photos as gruesome, however, except some blood there is nothing gruesome about any of the photos. Most merely

20

depict the victim, sitting in a chair, on the gurney, being treated and being transported.

Steve Moreno testified to the blood on Wallace's shirt. Detective Vasquez testified that Wallace had a puncture wound toward the side/back of his thoracic cavity which he sealed with the HyFin chest seal as seen in the photographs. The photographs were introduced through Mr. Wallace and it took very little time to introduce them and the State spent very little time on them. They gave the jury a visual of what occurred that night, helping them understand the treatment testified to and aiding in their decision as to whether a deadly weapon was used to cause bodily injury. Here, the probative value outweighed any prejudice that might have possibly arisen from these photographs. Therefore, the trial court did not abuse its discretion in admitting the photographs. *Casey*, 215 S.W.3d at 879; *Shuffield*, 189 S.W.3d at 786; *Prible*, 175 S.W.3d at 734.

Appellant's second point of error lacks merit and should be overruled.

## STATE'S RESPONSE TO APPELLANT'S
## THIRD POINT OF ERROR

In his third point of error, appellant suggests that the trial court erred in admitting hearsay testimony from Mr. Wallace (Appellant's brief at 6). Appellant does not provide the exact testimony he is complaining about, however, he does cite to a portion of the record.

21

## STANDARD OF REVIEW

A trial court's decision to admit or exclude evidence is reviewed only for an abuse of discretion. *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005); *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002). The trial court's ruling should not be disturbed if the decision to admit or exclude the evidence is within the "zone of reasonable disagreement." *Montgomery*, 810 S.W.2d at 391. The appellate court may not substitute its own decision for that of the trial court. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). If the trial court's decision on the admission of evidence is supported by the record, the trial court will not be reversed. *Osbourn v. State*, 92 S.W.3d 531, 537 (Tex. Crim. App. 2002); *Montgomery*, 810 S.W.2d at 379.

## ARGUMENT AND AUTHORITIES

Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tex. R. Evid. 801(d). A statement which is not offered for the truth of the matter asserted, but for some other reason, is not hearsay. *Guidry v. State*, 9 S.W.3d 133, 152 (Tex. Crim. App. 1999); *Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995).

The hearsay rule forbids evidence of out-of-court assertions to prove the fact asserted in them. *Bell v. State*, 877 S.W.2d 21, 24 (Tex. App. — Dallas 1994, pet

ref'd). The purpose behind the rule is to exclude evidence too unreliable to be evaluated accurately by the trier of fact. *Id.* If the out-of-court statement is relevant only if the trier of fact believes that the statement was both truthful and accurate, then the statement is hearsay. *Id.* If the relevancy of the statement does not hinge on the truthfulness of the statement, it is not hearsay. See 2A STEVE GOODE et al., *Texas Practice Series: Courtroom Handbook on Texas Evidence* §801(a)-(d) (3) ( 2013 ed.). Thus, if the statement is not an assertion or is not offered to prove the facts asserted, it is not hearsay by definition. *Alexander v. State*, 820 S.W.2d 821, 823 (Tex. App. — Waco 1991, pet. ref'd) (witness did not relate any "statement" made by a third-party declarant that was offered for the truth of the matter asserted; therefore, the testimony was not hearsay).

## APPLICATION

Prior to the testimony in question, Wallace testified that he realized who the backpack belonged to and it was the same person that was the owner of the vehicle, not the individual he was confronting. Wallace tried to get the backpack from the individual. The individual started waving what Wallace later realized was a knife and yelling for Wallace to get back. At this point, the only way Wallace knew to protect himself was to try and charge the guy as hard as possible and when he did lots of stuff dropped all around them. Wallace testified that initially, while he and the individual were by the vehicle he called out to Steve, a Kiolbassa

23

employee to let him know what was happening. The State asked Wallace the following:

Q.    (By Mr. Speir) Yes, sir. What did you tell Steve?
A.    I told Steve there was someone there trying to break into a vehicle and to -- that I needed assistance.

(3R.R. at 73, 74). Wallace's testimony was not hearsay. Wallace did not relate a statement offered for the truth of the matter asserted. *Drake v. State*, 860 S.W.2d 182, 184 (Tex. App. — Houston [14 Dist.] 1993, pet. ref'd). If an out of court statement is not offered for the truth of the matter asserted, but for the purpose of showing what was said, the statement is not hearsay. *Livingston v. State*, 739 S.W.2d 311, 331 (Tex. Crim. App 1987).

Here, the statement was not offered for the truth of the matter asserted in that it was not offered to prove that appellant was burglarizing vehicles. Instead, the testimony was offered to show what was said, that the complainant needed help, and how Steve Moreno became involved. *Fletcher v. State*, 960 S.W.2d 694, 699 (Tex. App. Tyler 1997)(witness did not relate any statement by a declarant that was offered for the truth of the matter asserted); *Bell*, 877 S.W.2d at 24; *Alexander*, 820 S.W.2d at 823.

In the alternative, Warren's statement qualified as a present sense impression exception to the hearsay rule. A present sense impression is a statement describing or explaining an event or condition made while the declarant was perceiving the

24

event or condition, or immediately thereafter. Tex. R. Evid. 803(1). The present sense impression exception to the hearsay rule is based upon the premise that the contemporaneity of the event and the declaration ensures reliability of the statement. *Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999). The rationale underlying the present sense impression is that: (1) the statement is safe from any error of the defect of memory of the declarant because of its contemporaneous nature, (2) there is little or no time for a calculated misstatement, and (3) the statement will usually be made to another (the witness who reports it) who would have an equal opportunity to observe and therefore check a misstatement. *Rabbani v. State*, 847 S.W.2d 555, 560 (Tex. Crim. App. 1992); *Esparza v. State*, 31 S.W.3d 338, 342 (Tex. App. — San Antonio 2000, no pet.).

To be admissible as a present sense impression, a statement must (a) describe or explain an event or condition, (b) be expressed by the person who made the observation, and (c) be made contemporaneously with or immediately after the observation. *See* Tex. R. Evid. 803(1). Warren's statement clearly was describing what was happening as it was occurring so that Steve could assist him in handling the situation, and was therefore, admissible under the present sense impression exception. *See Harris v. State*, 736 S.W.2d 166 (Tex. App. — Houston [14th Dist.] 1987, no pet.).

Warren's statement was also admissible as an excited utterance. A statement "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is admissible hearsay. Tex.R.Evid. 803(2).

Finally, error, if any was harmless. The admission of inadmissible hearsay is non-constitutional error. *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). Non-constitutional error that does not affect appellant's substantial rights are disregarded. Tex. R. App. P. 44.2(b). The court reviews the record as a whole to determine whether the error influenced the jury's verdict. *Johnson*, 967 S.W.2d at 417. The error is harmless if we determine that the error did not influence or had only a slight influence on the verdict. *Fowler v. State*, 958 S.W.2d 853, 865 (Tex. App. — Waco 1997), *aff'd*, 991 S.W.2d 258 (Tex. Crim. App. 1999).

In light of the entire record, the admission of Warren's testimony regarding what he yelled out to Steve, if error, was harmless. Tex. R. App. P. 44.2(b).

Appellant's third point of error lacks merit and should be overruled.

## Conclusion

WHEREFORE, PREMISES CONSIDERED, the State submits that this case should in all things be affirmed.

.                                      Respectfully submitted,

Nicholas "Nico" LaHood
Criminal District Attorney
Bexar County, Texas


STEVEN SPEIR, DANIEL WALKER
Assistant Criminal District Attorney
Bexar County, Texas


_/s/_*Mary Beth Welsh*_____
MARY BETH WELSH
Assistant Criminal District Attorney
Bexar County, Texas
Paul Elizondo Tower
101 W. Nueva, Suite 370
San Antonio, Texas 78205
mwelsh@bexar.org
(210) 335-2782
(210) 335-2436 (fax)
State Bar No. 00785215
(On Appeal)

Attorneys for the State

27

**Certificate of Service**

I, MARY BETH WELSH, Assistant Criminal District Attorney, Bexar County, Texas, hereby certify that a true file stamped copy of the above and foregoing State's Brief was mailed to James C. Oltersdorf, Attorney for Appellant, 410 South Main St., Suite 205, San Antonio, Texas 78204.

    /s/*Mary Beth Welsh*
MARY BETH WELSH

**Certificate of Compliance**

Pursuant to rule 9.4(i)(1)&(i)(2) of the Texas Rules of Appellate Procedure, I, Mary Beth Welsh, Assistant Criminal District Attorney, Bexar County, Texas, certify that this foregoing brief contains 6,048 words from the beginning of the State's response to appellant's first point of error until, but excluding, the signature block and the total word count is 7,325.

    /s/*Mary Beth Welsh*
MARY BETH WELSH